448 P.2d 96

**STATE of Arizona, Appellee,**

v.

**Daniel W. COUNTERMAN, Appellant.**

**No. 1 CA-CR 78.**

Court of Appeals of Arizona.

Dec. 9, 1968.

Rehearing Denied Jan. 9, 1969.

As Modified on Denial of Rehearing Jan. 29, 1969.

Review Denied March 4, 1969.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Lewis, Roca, Beauchamp & Linton, by John P. Frank and Paul G. Ulrich, Phoenix, for appellant.

STEVENS, Judge.

Daniel J. Counterman, Jr., hereinafter referred to as defendant, was found guilty of the crime of assault with a deadly weapon, in violation of A.R.S. § 13–249, and sentenced to a term of not less than five nor more than eight years in the Arizona State Prison.

A chronology of the proceedings leading up to this appeal is as follows:

On 19 April, 1965, a complaint was filed against defendant charging him with the crime of assault with a deadly weapon. On 20 May, 1965, a preliminary hearing was commenced. The preliminary hearing was continued and finally completed on 14 July, 1965. On 29 July, 1965, an information was filed against the defendant, charging him with one count of assault with a deadly weapon. The alleged victim was Bernice Bachman. On 11 August, 1965, defendant was arraigned, at which time he entered a dual plea of not guilty and not guilty by reason of insanity. On 22 September, 1965, the defendant was found guilty by a jury. He was adjudged guilty and sentenced. Thereafter the defendant appealed. Different counsel was appointed by the Superior Court to prosecute the appeal. The matter was submitted to this Court for consideration of the record for fundamental error. A.R.S. § 13–1715. On 27 April, 1966, this Court affirmed the conviction, finding no fundamental error in the record. 3 Ariz.App. 244, 413 P.2d 575 (1966). Thereafter the United States Su-

preme Court rendered its opinion in the case of Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Defendant then filed a petition for a writ of habeas corpus in the Arizona Supreme Court which Court assigned the petition its cause number H–260. On 13 October, 1967, the Supreme Court entered the following order:

"Application for writ of habeas corpus— transferred to Court of Appeals, Division No. 1, for determination and decision."

The Supreme Court's power of "transfer" is found following subsection 6 of Section 5 of Article VI, Arizona Constitution, A.R.S. On 6 December, 1967, this Court appointed defendant's present counsel to represent defendant in the habeas corpus matter. The defendant then filed motions to vacate the Court's opinion of 27 April, 1966, and to treat the petition for habeas corpus as an application for a delayed appeal. See In Re Acosta, 97 Ariz. 333, 400 P.2d 328 (1965). On 5 March, 1968, this Court entered an order treating the petition for a writ of habeas corpus as a motion to reopen the appeal for further consideration. In the order of 5 March, 1968, this Court expressly reserved its decision as to whether to vacate or affirm its opinion of 27 April, 1966 until after a full consideration of the case on the briefs to be submitted pursuant to the order.

The defendant makes five basic arguments on appeal:

(1) That his conviction was unconstitutional as a violation of due process by reason of a conflict of interest on the part of the State;

(2) That the trial court erred in denying defendant's motion to require the prosecution to elect as to which of two offenses defendant was being tried;

(3) That he was denied his Sixth Amendment right to assistance of counsel by reason of his counsel's absence at the time the jury returned its verdict;

(4) That he was denied a fair trial because of the failure of the State to intro-

duce all exhibits in evidence, and that he was denied effective assistance of counsel by reason of the State's failure to provide defendant with the services of a ballistics expert at State expense; and

(5) That the trial court committed fundamental error in failing to properly instruct the jury.

The facts necessary for our determination of the issues presented on this appeal may be summarized as follows:

On the evening of 17 April, 1965, defendant's wife Linda, left the defendant and moved into the home of her parents, Howard Bachman and Bernice Bachman. Thereafter, at approximately 12:30 a. m. defendant drove to the Bachman residence for the purpose of talking to his wife. When defendant arrived at the Bachman residence he knocked on the door. Bachman opened the door and defendant asked if he could see his wife. At this time the defendant had a 22 revolver in his hand. Bachman refused to let the defendant see Linda and started to close the door. The defendant then hit the door with his shoulder and forced his entrance into the Bachman home, still holding the revolver in his hand, and again requested permission to see his wife. Bachman told Mrs. Bachman to telephone the police. While Mrs. Bachman was telephoning the police, defendant fired his revolver toward her, the bullet entering the wall about one foot from her shoulder. The defendant and Bachman then scuffled in the living room, defendant broke loose, went through a doorway into the kitchen and found Linda. He then tried to talk to Linda in a utility room off the kitchen, but a struggle ensued between the defendant and Bachman. During this struggle Mrs. Bachman was present in the utility room. While Bachman and defendant were engaged in the struggle the revolver was again discharged and Mrs. Bachman, who was standing 3 or 4 feet from defendant, was struck midway between her waist and left breast. Thereafter, the police arrived and arrested the defendant.

## CONFLICT OF INTEREST

Defendant contends that his conviction was. constitutionally invalid, as in violation of the requirement of fundamental fairness assured by due process of law. He bases this contention upon a purported conflict of interest on the part of the State which resulted from the representation of the defendant's former wife by an Assistant City Attorney for the City of Phoenix, in a divorce action against the defendant which resulted in a divorce decree prior to the conclusion of defendant's preliminary hearing. This divorce was appealed and affirmed. Counterman v. Counterman, 6 Ariz.App. 454, 433 P.2d 307 (1967) review denied.

In support of this argument defendant urges that the State had a direct interest in obtaining a divorce for defendant's former wife so that she would be able to testify against the defendant at the preliminary hearing and trial. Because of this conflict of interest, defendant argues that the State abdicated its responsibility to see that substantial justice was done, thereby depriving the defendant of the procedural fairness implicit in due process of law.

The primary authority relied upon by defendant is Ganger v. Peyton, 4 Cir., 379 F.2d 709 (1967). In that case petitioner was convicted for assaulting his wife. The State prosecuting attorney represented petitioner's wife in a divorce action filed against the petitioner, based on the same assault which was the subject matter of the criminal proceeding. There was evidence that the prosecuting attorney had offered to drop the assault charge if petitioner would agree to a favorable property settlement in the divorce proceeding. On petition for a writ of habeas corpus the Federal District Court reversed petitioner's conviction and the State appealed. The United States Court of Appeals sustained the reversal upon the grounds that the prosecuting attorney's dual representation of the State in the criminal proceeding and the wife in the divorce proceeding violated the concept of fundamental fairness which is assured by

due process of law. In so holding the Court, 379 F.2d at page 713, reasoned as follows:

"Because of the prosecuting attorney's own self interest in the civil litigation (including the possibility that the size of his fee would be determined by what could be exacted from defendant), he was not in a position to exercise fair-minded judgment with respect to (1) whether to decline to prosecute, (2) whether to reduce the charge to a lesser degree of assault, or (3) whether to recommend a suspended sentence or other clemency."

The direct conflict of interest which was clearly present in the Ganger case has not been shown in the instant case. There is nothing in the record indicating that the Assistant City Attorney who represented the defendant's wife in the divorce action also participated in the criminal prosecution of the defendant. We find that the mere representation of the defendant's former wife by an Assistant City Attorney did not present an actual conflict of interest in relation to the State's responsibility in seeing that justice was done in prosecuting the defendant.

Defendant further suggests that he was prejudiced by the purported conflict of interest since, if the divorce had not been obtained, defendant's former wife would have been precluded from testifying at both the preliminary hearing and the trial pursuant to A.R.S. § 13–1802, as amended, which in part provides:

"A person shall not be examined as a witness in the following cases:
1. A husband for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, be, without consent of the other, examined as to any communication made by one to the other during the marriage."

In this connection we observe that the defendant was represented at both the preliminary hearing and the trial by counsel who was an experienced and able practitioner. At no time during the preliminary hearing or the trial did defendant's counsel object to the examination of defendant's former wife as a witness against the defendant. We are of the opinion that counsel for the defendant would have objected to the examination of the defendant's former wife as a witness had he deemed it in his client's best interests to do so.

We hold that there was no conflict of interest on the part of the State depriving the defendant of the fundamental fairness assured by the due process clause of Article 2, Section 4 of the Arizona Constitution, or the Fourteenth Amendment of the United States Constitution.

### ELECTION

The defendant next contends that the trial court erred in failing to require the State to elect as to which assault it was charging, and that it also erred in failing to instruct the jury with reference to which assault the defendant was being tried. Defendant urges that since the information only charged the defendant with one count of assault with a deadly weapon and the State presented evidence of two separate assaults with a deadly weapon, the defendant had the right to require the State to make an election.

The information filed against the defendant charging him with one count of assault with a deadly weapon was as follows:

"The said Daniel W. Counterman on or about the 18th day of April, 1965, and before the filing of this information at and in the County of Maricopa, State of Arizona, did then and there with a certain deadly weapon or instrument, to wit: a revolver, assault one Bernice Bachman, all contrary to the provisions of § 13–249, A.R.S.1956;"

During the course of trial there was testimony that defendant had twice discharged his revolver at Mrs. Bachman during the dispute which occurred at the Bachman residence. Both Bachman and Mrs. Bach-

man testified that defendant first fired his revolver at Mrs. Bachman while she was telephoning the police. Bachman, Mrs. Bachman, and Linda testified that following the first shot a struggle ensued between Bachman and defendant, in the utility room, and during this struggle the revolver was again discharged this time striking Mrs. Bachman in the chest. Although there was conflicting testimony whether the discharge of the revolver in the latter instance was caused by the struggle between Bachman and defendant, both Mrs. Bachman and Linda testified that just prior to the second shot the defendant said, "I am going to get you Howard, but I am going to get Bea first."

At the conclusion of the State's case, defense counsel moved for a directed verdict on the ground that the injury which took place was a result of the struggle between the defendant and Bachman. The trial court denied this motion. The record also reveals that during the settling of jury instructions defense counsel moved to require the State to elect which of the two assaults it was charging. This motion was also denied.

■ We agree with defendant that where more than one offense than that charged in the information is admitted in evidence the trial court has the duty to require the State to elect upon which of the offenses it relies for conviction. This rule was recognized by our Supreme Court in 48 Ariz. 43, 59 P.2d 305 (1936) wherein the Court stated:

"The law is well settled that, where the evidence shows, or tends to show, that several acts of intercourse have occurred between defendant and prosecuting witness, it is incumbent upon the prosecution to elect which one of such acts he relies upon for a conviction."

■ The rationale for this rule is that a person has a constitutional right to be put on trial for a single offense, and that he has a right to a unanimous jury verdict with reference to the criminal act for which he was tried. See Cody v. State, 361 P.2d 307, 84 A.L.R.2d 997 (Okl.Cr.App., 1961); Cooper v. State, 31 Okl.Cr. 217, 238 P. 503 (1925).

■ The rule does not apply, however, "where a series of acts form part of one and the same transaction, and as a whole constitute but one and the same offense." People v. Jefferson, 123 Cal.App.2d 219, 266 P.2d 564 (1954); People v. Simon, 21 Cal. App. 88, 131 P. 102 (1913).

■ In Jefferson defendant was convicted of assault with a deadly weapon. Defendant was involved in a quarrel with her husband. When the police arrived the defendant was standing in the front yard with a butcher knife in her hand. When a police officer attempted to disarm defendant, she struck at him with the knife. Defendant then went into the house with the police officer after she was requested to procure her marriage license. While in the house defendant laid the knife down and the officer grabbed it. Defendant then wielded a pocket knife and struck the officer. Defendant was thereafter convicted of one count of assault with a deadly weapon, and appealed contending that it was substantial error for the trial court not to require the prosecution to make an election as to which of the two assaults defendant was being tried. The Court held that the rule relied upon by defendant was not applicable because the whole episode constituted a single offense:

"This whole episode consumed from 10 to 15 minutes, most of which time was taken up in talking outside of the house in an effort by the officers to induce the appellant to give up the knife. Both of the matters relied upon as being separate and distinct offenses, occurred in the course of a continuous effort on the part of the officer to disarm the appellant. They were part of the same incident, and they cannot reasonably be held to constitute two separate offenses, each complete in itself, and each of which would require a separate charge and a separate trial."

The "transaction" test applied in Jefferson is the same as that applied under A.R.S. § 13–1641 which prohibits the imposition of different punishments for the same offense. See State v. Vallejos, 89 Ariz. 76, 358 P.2d 178 (1960). We approve of the principle announced in Jefferson and deem it applicable in this instance.

## RETURN OF VERDICT

The next question presented is whether the defendant was denied his Sixth Amendment right to assistance of counsel by reason of his counsel's absence when the jury returned the verdict.

Defendant contends that the return of the verdict is a crucial stage of a criminal proceeding, which requires the guiding hand of counsel. In support of this proposition he cites several United States Supreme Court decisions relating to an indigent's constitutional right to assistance of counsel. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963); Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, 547 (1967); Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

We realize that the right to assistance of counsel is not confined to the trial stage of a criminal proceeding. Mempa v. Rhay. None of the cases cited, however, related to the return of the verdict stage of a criminal proceeding. In Mempa v. Rhay, the case most strongly relied upon by defendant, the Supreme Court held that a revocation of parole hearing was a critical stage in a criminal proceeding, in which the "substantial rights of a criminal accused may be affected." The Court based this decision upon a finding that certain rights of a convicted person would be lost if not exercised at the hearing.

· We do not find the return of the verdict stage, with which we are here concerned, to be such a critical stage that the rights of the defendant will be substantially affected. [Upon return of the ver-

dict counsel for a defendant may do two things: (1) he may request a roll call of the jury pursuant to Criminal Rule 283; or, (2) he may move the Court to poll the jury, Criminal Rule 284, 17 A.R.S.]

The record clearly shows that throughout the trial defendant was represented by able and qualified counsel who presented a vigorous and commendable defense. Although defendant's counsel, with the permission of an able trial judge, was not present when the jury returned its verdict, he was present at all other phases of the criminal proceeding, including sentencing. It is clear that the absence of defendant's counsel was voluntary, as disclosed by the following minute entry of 22 September, 1965:

> "9:32 P.M. The jury returns into court, and all being present in the jury box, roll call is waived. Defendant is present. Each counsel has waived his presence. The jurors, by their foreman report they have reached their verdict * * *."

There are several cases which hold that the voluntary absence of counsel at the time the jury returns its verdict does not deprive the defendant of his Sixth Amendment right to assistance of counsel. Lovvorn v. Johnston, 118 F.2d 704 (9th Cir., 1941), certiorari denied, 314 U.S. 607, 62 S.Ct. 92, 86 L.Ed. 488; Newagon v. Swope, 183 F.2d 340 (9th Cir., 1950); State v. Badda, 68 Wash.2d 50, 411 P.2d 411 (1966).

In Badda, the Supreme Court of Washington dismissed appellant's contention, which was the same as that made by defendant in this instance, quoting from Newagon.

> " * * * to say that the courts must cease to function, indeed, are without jurisdiction to proceed further, until they search for, seek out and bring in counsel whose duty it is to be in court, and who by their own volition are absent, is to indulge in over-meticulous nicety of construction of the constitutional provision."

We likewise approve of the principle followed in Badda, and hold that defendant

was not deprived of his constitutional right to assistance of counsel guaranteed by the Sixth and Fourteenth Amendments, by reason of his counsel's absence when the jury returned its verdict.

## SUPPRESSING OF EVIDENCE —ASSISTANCE OF COUNSEL

Defendant next raises the question whether he was deprived of a fair trial by reason of the State's failure to introduce all exhibits into evidence.

Defendant asserts that he was deprived of a fair trial because the State failed to offer in evidence the brassiere worn by Mrs. Bachman when she was shot. It is contended that the brassiere was significant evidence, tending to show that the gun discharged during the course of a struggle. He further argues that he was denied effective assistance of. counsel by reason of the State's failure to provide defendant with a ballistics expert so that tests could be conducted for powder tattooing on the blouse worn by Mrs. Bachman when she was shot.

In the recent case of State v. Fowler, 101 Ariz. 561, 422 P.2d 125 (1967), the Arizona Supreme Court held that the failure of the State to reveal relevant physical evidence found at the scene of the crime constituted a denial of due process. Also see, Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Barbee v. Warden, Maryland Penitentiary, 331 F.2d 842 (4th Cir., 1964). In Fowler the State failed to disclose a knife which had been found at the scene of the crime. The knife was material and relevant as supporting defendant's plea of self defense. Defendant's counsel did not learn of the knife until after the trial and defendant's conviction. Our Supreme Court held the State was duty-bound to reveal the existence of the knife and its failure to do so deprived defendant of a fair trial.

Our examination of the record in the instant case does not reveal the suppression of evidence on the part of the State. The existence of the State's custody of the brassiere in question was clearly made known to the defendant and his counsel during defense counsel's cross-examination of police officer Rimer, the officer investigating the shooting of Mrs. Bachman. Rimer testified:

"Q. Now, did you, aside from the evidence which you have indicated that you took into custody, did you take any other evidence into custody?

A. Yes, sir.

Q. What was that?

A. One white woman's brassiere.

Q. Whom did that belong to?

A. To the victim.

Q. You say the victim, you mean Mrs. Bachman?

A. Yes, sir.

Q. Did that have any marks on it?

A. Yes, sir, it had.

Q.. What marks were they?

A. It had powder tattooing, and I believe a small amount of blood."

■ We are of the opinion that there was no suppression of evidence on the part of the State, and that the State's failure to offer the brassiere in evidence did not deprive defendant of a fair trial. We hold that the principle announced in FOWLER is not applicable in the case now under consideration.

■ With reference to defendant's contention that he was denied effective assistance of counsel because the State did not provide him with a ballistics expert, we hold our recent case of San Miguel v. McCarthy, 8 Ariz.App. 323, 446 P.2d 22 (1968), to be controlling. In San Miguel this Court adhered to the rule of State v. Crose, 88 Ariz. 389, 357 P.2d 136 (1960), as followed in State v. Superior Court In And For County Of Pima, 2 Ariz.App. 458, 409 P.2d 742 (1966).

## INSTRUCTIONS

Defendant's final argument relates to the failure of the trial court to instruct the jury with reference to:

(1) Lesser offenses included within the crime of assault with a deadly weapon;

(2) Mental impairment or defect falling short of insanity under the M'Naghten Rule, as negating criminal intent;

(3) The Model Penal Code test of insanity.

Defendant contends that the trial court committed fundamental error in failing to instruct the jury as outlined above. We disagree.

We find no error in the failure of the trial court to instruct the jury as to a lesser included offense within the crime of assault with a deadly weapon. Defendant made no request for such instruction, nor does the evidence support such an instruction. State v. Armstrong, 6 Ariz.App. 139, 430 P.2d 718 (1967). The defendant was guilty as charged or he was not guilty.

Nor do we find error in the failure of the trial court to instruct the jury that mental impairment falling short of insanity as defined by the M'Naghten test could be considered as negating criminal intent. Foster v. State, 37 Ariz. 281, 294 P. 268 (1930).

Finally, we find no error in the trial court's failure to instruct the jury with reference to the Model Code test of insanity. State v. Schantz, 98 Ariz. 200, 403 P.2d 521 (1965); State v. Brock, 101 Ariz. 168, 416 P.2d 601 (1966).

We do not usually commend counsel for their presentations to this Court. We are indebted particularly to Mr. Ulrich for the excellence of his brief and of his oral presentation. This was service in the highest tradition of lawyer responsibility.

The request to vacate our earlier decision is denied. The judgment of guilt and sentence are affirmed.

CAMERON, C. J., and DONOFRIO, J., concur.