IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Appellee*,

*v.*

MIGUEL ANGEL RIOS,
*Appellant*.

No. 2 CA-CR 2020-0106
Filed November 10, 2021

———————————————

Appeal from the Superior Court in Pima County
No. CR20185480001
The Honorable Catherine M. Woods, Judge

**AFFIRMED**

———————————————

COUNSEL

Mark Brnovich, Arizona Attorney General
Linley Wilson, Deputy Solicitor General/Section Chief of Criminal Appeals
By Mariette S. Ambri, Assistant Attorney General, Tucson
*Counsel for Appellee*

Joel Feinman, Pima County Public Defender
By Abigail Jensen, Assistant Public Defender, Tucson
*Counsel for Appellant*

## OPINION

Judge Brearcliffe authored the opinion of the Court, in which Presiding Judge Eppich and Chief Judge Vásquez concurred.

B R E A R C L I F F E, Judge:

¶1        Miguel Rios appeals from his convictions after a jury trial for two counts of aggravated harassment.  The trial court sentenced him to concurrent terms, the longest of which is 3.5 years.  On appeal, Rios claims that the court abused its discretion by denying his mid-trial request for self-representation and that his convictions for aggravated harassment violate constitutional double-jeopardy principles.  We affirm.

### Factual and Procedural Background

¶2        "We view the facts and all reasonable inferences therefrom in the light most favorable to sustaining the convictions."  *State v. Powers*, 200 Ariz. 123, ¶ 2 (App. 2001).  Rios and A.P. dated for approximately three years, during which they lived together and had twin sons.  Their relationship ended in November 2017.  In March 2018, Rios called A.P. fifty-two times within thirty minutes while she was at a family gathering at her mother's house.  When A.P. did not respond, Rios began "harassing [A.P.'s] mother."

¶3        The following day, A.P. sought and was granted an order of protection against Rios.  The order provided that Rios was to have no contact with A.P., their twin sons, or A.P.'s daughter.  After a contested hearing, the order was modified to permit Rios to send A.P. two text messages per day solely "to address legal decision making and parenting time issues for parties' children."  The order provided:  "All permitted communications shall be free of threats, profanity, insults, and attempts to reconcile."[1]

---

[1]Earlier this year, we affirmed Rios's convictions for two counts of aggravated harassment in June 2018, based on his knowing violation of the order of protection when he called A.P. eighteen times and sent her hundreds of text messages in a twenty-four hour period.  *State v. Rios*, No. 2 CA-CR 2019-0217, ¶¶ 1, 4 (Ariz. App. Apr. 22, 2021) (mem. decision).

¶4        On September 4, 2018, Rios again contacted A.P. by sending her thirteen text messages. The first text was sent at 12:51 a.m. and the last at 8:26 a.m. The first message stated, "I love you too." A.P. later testified that she was "confus[ed]" because she had not "do[ne] anything to warrant that text message." Nonetheless, she did not send any response. A.P. then received the next text: "Did I. Fuck up or can I. See you?" Again, A.P. did not respond. Rios then texted her, "I'm coming home wish me [l]uck" and then in the eleventh of the thirteen messages, "Tell my kids I love them. I'm going to prison for not following the restraining order I guess." A.P. did not respond to any of the messages Rios sent during this period and reported these contacts to law enforcement.

¶5        Rios was charged with one count of aggravated harassment of A.P. for disturbing her peace by texting her on September 4 and a second count of aggravated harassment of A.P. for "commit[ting] a second or subsequent violation of aggravated harassment" by disturbing her peace by texting her on the same date. In his first trial, Rios asked to represent himself just before closing argument, and the trial court granted this request. That trial ended in a mistrial after the jury was unable to reach a verdict. Rios requested new counsel for the second trial, and the court appointed attorney Stephanie Meade. Meade later filed a motion to withdraw from representing Rios, stating that "irreconcilable differences have arisen," and, although the court denied the motion, it later permitted attorney Joseph Ezzo to take Meade's place. Ezzo represented Rios during his second trial.

¶6        During that trial, after the state had rested, and before his testimony, Rios asked to personally cross-examine A.P., although Ezzo had already cross-examined her during the state's case. Ezzo told the trial court that he knew of no basis to re-examine A.P., and the court denied the request. Rios then stated he would "really, really like to cross-examine and if there's any way possible, even if I have to represent myself, I would like to have the opportunity to do so." The court said it saw no "good cause or any legal ground to relieve [defense] counsel at this time," but it agreed to discuss Rios's request outside of the presence of the jury.

¶7        The trial court asked Rios what his grounds were for his request to relieve his, now, third lawyer. Rios responded that he wanted to re-examine A.P. because he had "very, very important and crucial evidence that [he] could not share with anybody else." He further stated he was "the only one who knows the facts between [him and A.P.], and [he] would know exactly what questions [he] would need to ask [A.P.] to reveal this crucial evidence." Rios admitted that this was not newly discovered

evidence. The court noted that, even if Rios could represent himself, it would "probably not" allow the use of undisclosed information. Ezzo told the court that Rios had requested that he make a motion to permit the evidence, but that he had sent Rios a lengthy email explaining why the information was not relevant and that, with the closeness of trial, filing such a motion was no longer timely. Ezzo assured the court that he was "prepared to go through the rest of . . . trial." Finding no good cause to relieve Ezzo as counsel, and given Ezzo's experience and willingness to continue the representation, the court denied Rios's request.

¶8 During deliberations, the jury submitted a written question to the trial court, asking, "Why are there two counts? They seem the same." After conferring with counsel, the court instructed the jury to "[p]lease refer to the indictment . . . [in] your preliminary jury instructions. Count One alleges an act of aggravated harassment. Count Two alleges a second act of aggravated harassment on the same day."

¶9 Rios was convicted and sentenced as described above. This appeal followed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

**Analysis**

**Request for Self-Representation**

¶10 On appeal, Rios argues that the trial court abused its discretion in denying his request to represent himself. We review a denial of a request for self-representation for an abuse of discretion. *State v. Dunbar*, 249 Ariz. 37, ¶ 10 (App. 2020). However, "an erroneous failure to accord a defendant his properly asserted right to represent himself . . . is structural error requiring reversal without a showing of prejudice." *State v. McLemore*, 230 Ariz. 571, ¶ 15 (App. 2012).

¶11 For an accused to exercise his constitutional right to proceed without counsel and represent himself, he "must voluntarily and knowingly waive his right to counsel and make an unequivocal and timely request to proceed pro se." *State v. Lamar*, 205 Ariz. 431, ¶ 22 (2003). A request is generally considered timely if it is made before the jury is empaneled. *Id.* If such a request is untimely, it falls within the discretion of the trial court to grant or deny the request. *State v. De Nistor*, 143 Ariz. 407, 413 (1985). In exercising that discretion, the court should consider "the reasons for the defendant's request, the quality of counsel, the defendant's proclivity to substitute counsel, and the disruption and delay expected in

4

the proceedings if the request were to be granted." *Id.* (quoting *People v. Barnes*, 636 P.2d 1323, 1325 (Colo. App. 1981)).

**¶12**        Rios untimely sought leave to represent himself after the state had rested for the purpose of eliciting testimonial evidence that had not been disclosed before trial. At no time did Rios assert his attorney was inadequate, he was being denied a fair trial, or any reason other than his pursuit of undisclosed, likely inadmissible evidence. The trial court recognized that defense counsel had extensive experience and was prepared to go through with the rest of trial. Under the circumstances, and in light of Rios's repeated changes of counsel, the court did not abuse its discretion in denying Rios's request to represent himself.

**Double Jeopardy**

**¶13**        Rios also contends that his convictions for two counts of aggravated harassment violate double-jeopardy principles because, notwithstanding that he sent multiple text messages to A.P., they "arose from a single, uninterrupted course of conduct."[2] The state argues that Rios's convictions for aggravated harassment did not violate double jeopardy because each communication with A.P. constituted a separate, chargeable offense.

**¶14**        Because Rios did not object on this basis below, as he concedes, we review only for fundamental error. *See State v. Jurden*, 239 Ariz. 526, ¶ 7 (2016). "The Double Jeopardy Clause" of the United States and Arizona Constitutions[3] "protects against multiple punishments for the

---

[2]Rios additionally argues that his charges violate double jeopardy because "aggravated harassment as charged in Count 1 is a lesser-included offense of 'a second or subsequent' aggravated harassment offense as charged in Count 2." "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *State v. Anderson*, 210 Ariz. 327, ¶ 139 (2005). Here, as discussed, there is not a "same act" but discrete, separate acts that contribute to each count charged, and each act, or text message, violates the same statute—A.R.S. § 13-2921.01(A)(1). Therefore, this argument is not applicable to these circumstances.

[3]"The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant against multiple punishments or repeated prosecutions

5

same offense." *Id.* ¶ 10. "[I]f multiple violations of the same statute are based on the same conduct, there can be only one conviction if there is a single offense." *Id.* ¶ 11. In such a case, "the statutory definition of the crime determines the scope of conduct for which a discrete charge can be brought," or, in other words, the "allowable unit of prosecution." *Id.* (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952)). A double-jeopardy violation constitutes fundamental error. *Id.* ¶ 7; *see also* U.S. Const. amend. V.

¶15 Section 13-2921(A)(1), A.R.S., provides that "[a] person commits harassment if, with the intent to harass or with knowledge that the person is harassing another person, the person" "contacts, communicates or causes a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic, or written means in a manner that harasses." Harassment is further defined in this section to mean "conduct that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person." § 13-2921(E).

¶16 Under A.R.S. § 13-2921.01(A)(1), harassment becomes aggravated if the person commits harassment as provided in § 13-2921 and the "court has issued an order of protection . . . against the person and in favor of the victim of harassment." Section 13-2921.01(C) provides that a person who violates subsection (A)(1) of this section is guilty of a class six felony, and a person who commits "a second or subsequent violation of subsection [(A)(1)] of this section is guilty of a class 5 felony." As stated above, Rios was charged in count one with aggravated harassment, a class six felony, and in count two with aggravated harassment, a class five felony.

¶17 Rios argues that "[t]he language used in the definition of the crime of harassment in A.R.S. § 13-2921 indicates that multiple acts occurring during the same course of conduct constitute a single offense." Consequently, he reasons that "[s]ending multiple text messages are, thus, a single offense and together constitute a single 'unit of prosecution.'" The text messages are, he argues, inseparable as a legal matter and cannot

_____

for the same offense and is applicable to the states through the Fourteenth Amendment." *McLaughlin v. Fahringer*, 150 Ariz. 274, 277 (1986). Article II, § 10 of the Arizona Constitution "is coextensive with the Fifth Amendment's Double Jeopardy Clause," *Jurden*, 239 Ariz. 526, n.1, and we thus analyze claims under each identically, *State v. Eagle*, 196 Ariz. 188, ¶ 5 (2000).

support two separate counts of harassment. Rios further contends that § 13-2921 is ambiguous and that we must thus resolve the ambiguity "under the rule of lenity, in [his] favor." *See State v. Fell*, 203 Ariz. 186, ¶ 10 (App. 2002) ("[R]ule [of lenity] applies when a statute is ambiguous and dictates that any doubt about statutory construction be resolved in favor of a defendant.").

¶**18**		The state, on the other hand, argues § 13-2921 is unambiguous in providing that each text to the victim constitutes a separate act or event and thus each text constitutes a separate crime of harassment and "unit of prosecution." Therefore, the state asserts that one text may support the first count of harassment and any of the remaining subsequent texts may support the separate second count.

¶**19**		We interpret the applicable statutes de novo. *Jurden*, 239 Ariz. 526, ¶ 7. "If the statutory language is unambiguous, we apply it as written without further analysis." *Id.* ¶ 15. But if "the statute is subject to more than one reasonable interpretation, we consider secondary principles of statutory interpretation, such as the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose." *Id.*

¶**20**		Rios relies on *State v. Counterman*, 8 Ariz. App. 526 (1968), *Jurden*, 239 Ariz. 526, and *State v. Powers*, 200 Ariz. 123 (App. 2001), for his argument that there can be only one conviction here. In *Jurden*, the defendant was charged with two counts of resisting arrest under A.R.S. § 13-2508, because he had resisted arrest by two individual law enforcement officers. 239 Ariz. 526, ¶ 3. The defendant urged that he should face only a single charge of resisting (a single) arrest, not multiple charges determined by the number of officers resisted. *Id.* ¶ 9. On review, our supreme court examined the statute, deeming it "ambiguous because it may be reasonably read to designate either an event-directed or victim-directed unit of prosecution." *Id.* ¶ 16. The court determined that the primary purpose of § 13-2508(A)(1) was to "punish resistance to state authority." *Id.* ¶ 26. Notwithstanding that multiple law enforcement officers might be involved in suppressing the resistance, resistance was a unified act and the "the unit of prosecution"—that is, the conduct that could be charged and punished— was "a single, continuous act of resisting arrest." *Id.* ¶¶ 16, 26. Consequently, the defendant could only be charged with and convicted of a single count of resisting arrest. *Id.* ¶ 26.

¶**21**		Years earlier, in *Powers*, we addressed multiple charges resulting from a motor vehicle accident in which two victims had been

injured. 200 Ariz. 123, ¶ 3. Powers fled the scene and was ultimately charged with two counts of leaving the scene of an accident under A.R.S. § 28-661—one count for each of the two injured victims. *Powers*, 200 Ariz. 123, ¶ 3. We first looked for statutory ambiguity. *Id.* ¶ 8. We found none, however, determining that "[t]he plain and ordinary meanings of the terms 'accident' and 'scene of the accident' do not depend on the number of victims. As commonly understood, only one accident scene exists even though accidents often involve multiple victims and impacts." *Id.* ¶ 9. We thus concluded that the law "permits only one conviction for leaving one accident scene regardless of the number of persons injured or killed." *Id.* ¶ 15. We further concluded that the primary purpose of the law— "prohibit[ing] drivers from seeking to evade civil or criminal liability by escaping before their identity can be established"—supported this reading of the law. *Id.* ¶ 13 (quoting *State v. Rodgers*, 184 Ariz. 378, 380 (App. 1995)).

**¶22** We do not find either *Jurden* or *Powers* persuasive as to § 13-2921. The statutes at issue in those cases were determined to be event-directed, with the primary purposes being to protect broad societal interests—punishing resistance to lawful authority (*Jurden*) and preventing flight from an accident before identification (*Powers*). The singular purposes dictated that only a single charge could arise from such conduct. We read § 13-2921(A)(1) to be "victim-directed," having been fashioned to protect an individual victim from any act that "seriously alarms, annoys or harasses." *See* § 13-2921(E) ("'Harassment' means conduct that is directed at a specific person."). Because any act of harassment can harm a victim, there may be multiple convictions arising from a harasser's harmful acts even within an otherwise definable period of time, provided each act meets the statutory definition of harassment in § 13-2921.

**¶23** In *State v. Counterman*, 8 Ariz. App. 526, 530-31 (1968), the state charged multiple acts of assault with a deadly weapon as a single count. This was unlike in *Jurden* or *Powers*, where the state charged multiple counts although the chargeable conduct was, as the courts would determine, a single offense. The defendant in *Counterman* first shot at the victim while she tried to call the police, just missing her, and then, soon after, actually shot the victim while her husband grappled with him for the gun. *Id.* at 531. Because the state presented evidence of both gun shots, the defendant argued that, to prevent double jeopardy, the state had to elect which of the two shots was the charged "assault." *Id.* Our court disagreed, concluding that both acts could be part of an overall single "course" of an assaultive act, and, if brought as a single act in a single charge, there need be no election. *Id.*

**¶24** Rios urges similarly that, even if the thirteen text messages here are discrete acts, if they occur during a single course of conduct then they must be bundled into a single charge. As we recently concluded, however, *Counterman* does not *require* that the state charge multiple acts as one offense when the offenses occur during a single, uninterrupted course of conduct, merely that it may do so. *See State v. Rodriguez*, 251 Ariz. 90, ¶ 14 (App. 2021), *review denied* (Ariz. Nov. 5, 2021). The state may also, as was done in *Rodriguez*, charge multiple acts of assault occurring during the course of a single "transaction" as individual acts of assault. *Id.* The only limitation being that each such assault must be individually proved. *See State v. Hoskins*, 199 Ariz. 127, ¶ 73 (2000).

**¶25** Ultimately, we do not find any ambiguity in the language of the statutes here. As stated above, one can harass another by causing "a communication" with another "by verbal, electronic, . . . telephonic, . . . or written means." § 13-2921(A)(1). As is relevant here, a text message is "[a] message consisting of words typed or entered on a keypad and sent electronically to a cell phone, especially from another cell phone." *Text Message*, The American Heritage Dictionary 1801 (5th ed. 2011). A text message is arguably a writing, but it is, as Rios acknowledges, an "electronic" and "telephonic" message.

**¶26** A person may certainly communicate with another in a conversation made up of a series of text messages. But a single text message by itself may convey a complete thought with harassing intent. Rios nonetheless would urge us to bind the state to pick some arbitrary time period (here, a calendar day) within which to evaluate all of the messages sent by the harasser as a group. We cannot agree that the statute can or must be so read. Certainly, we see no legal impediment to a text message such as "I am going to kill you" being chargeable as a discrete act of harassment. And we see no coherent reason why the state could not charge it as a discrete offense simply because other offending and harassing text messages are also sent to the same victim the same day. Therefore, it was not error to allow individual text messages to serve as support for separate charges of aggravated harassment.

**¶27** Accordingly, any one of the text messages sent here by Rios, otherwise qualifying as a statutorily harassing communication, could be separately charged, adjudged, and punished. There was no double-jeopardy violation simply because one text message served as the basis of count one and another, sent in the same twenty-four hour period, as the basis for count two.

**Disposition**

¶28      For the foregoing reasons, we affirm Rios's convictions and sentences.