196 P.3d 844

**STATE of Arizona, Appellee,**

v.

**Nermin KLOKIC, Appellant.**

**No. 1 CA–CR 05–0917.**

Court of Appeals of Arizona,
Division 1, Department A.

April 29, 2008.

Review Denied Oct. 28, 2008.

242

Terry Goddard, Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Karla Hotis Delord, Assistant Attorney General Attorneys, Phoenix, for Appellee.

James J. Haas, Maricopa County Public Defender by Joel M. Glynn, Deputy Public Defender Attorneys, Phoenix, for Appellant.

## OPINION

SNOW, Judge.

¶ 1 Nermin Klokic appeals his conviction on one count of aggravated assault. Because we cannot determine that the jury unanimously concluded that Klokic committed a specific act that constituted the criminal count for which he was charged, we reverse Klokic's conviction and remand for a new trial.

1. On appeal, we view the facts in the light most favorable to upholding the verdict and resolve all inferences against the defendant. *See State v.*

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 This appeal stems from a "road rage" incident between Klokic and the occupants of another vehicle.[1] According to the testimony at trial, Klokic cut off another vehicle containing two occupants, including Brian M., while Klokic was driving westbound on Cactus Road in Phoenix. After Klokic cut off the other vehicle, the two vehicles drove parallel to each other for some distance, during which time the vehicles' occupants interacted.

¶ 3 According to Klokic, Brian M. threw a bottle at Klokic's vehicle during this exchange. In response, Klokic drew a semiautomatic handgun from inside his vehicle and pointed it at Brian M. Sometime thereafter, Klokic pulled his car in front of Brian M.'s vehicle, forcing it to stop.

¶ 4 Brian M. acknowledged that he retrieved a wrench prior to getting out of his vehicle and was carrying it as he emerged. As he got out of the car, Klokic drew his handgun a second time and again pointed it at Brian M., this time because, according to Klokic, Brian M. was threatening one of Klokic's passengers with the wrench. Brian M. claimed that Klokic also pointed the handgun at Brian M.'s passenger.

¶ 5 Klokic was subsequently arrested and indicted on two counts of aggravated assault. The indictment's two counts were identical except that one count was for Klokic's alleged assault on Brian M. and the other count was for Klokic's alleged assault on Brian M.'s passenger. Count one, on which Klokic was subsequently convicted, alleged that "NERMIN KLOKIC, on or about the 19th day of March, 2004, using a handgun, a deadly weapon or dangerous instrument, intentionally placed [Brian M.] in reasonable apprehension of imminent physical injury."

¶ 6 To prove this count, the prosecution introduced testimony that Klokic pointed the handgun at Brian M. on two separate occasions—once from inside his car while the cars were in motion and again after the cars had

*Guerra,* 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

stopped and the street confrontation had begun. The State summarizes its case-in-chief as to this count as follows: "[Brian M.] testified to the same *two incidences* of Appellant pointing the gun at him, as referred to by the prosecutor in his opening statement." (Emphasis added.) In its closing argument, the prosecution told the jury that "[i]f you want to believe [the alleged pointing of the handgun at Brian M.] happened on the street, which it did, in the car, which it did, *either one will suffice*." (Emphasis added.)

¶ 7 After the State's case-in-chief, the defense asked the court to require the prosecution either to elect which particular act it was charging as the assault or to instruct the jurors that they must unanimously agree that Klokic committed a particular act that constituted the crime of assault. The trial court denied Klokic's motion, ruling that he had waived his challenge to the indictment by failing to raise it before trial and that "the State can choose how to draft its indictments if it is one continuance [sic] offense; and apparently that is the theory of the State, that it's one continuance [sic] offense as to Count One and Count Two."

¶ 8 For his part, Klokic maintained that he never pointed the handgun on either occasion. He also argued in the alternative, however, that even if the jury found that he did point the handgun at Brian M., he was justified by the circumstances in doing so. He argued that he would have been acting both in self-defense and in defense of others when he drew his handgun after Brian M. threw the bottle at his vehicle while the vehicles were in motion. And, once the vehicles came to a stop, he would have been acting in defense of his passenger when he drew his handgun in response to Brian M. threatening his passenger with the wrench. The jury was instructed on both defenses.

¶ 9 The jury found Klokic guilty of aggravated assault on count one (against Brian M.), but found him not guilty on count two (against Brian M.'s passenger). Klokic timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003) and 13–4033 (2001).

## ANALYSIS

¶ 10 On appeal, the State alleges that Klokic waived any duplicity[2] objection to the indictment by failing to timely object to it. However, the indictment here was not duplicitous. An indictment is subject to dismissal as duplicitous if it charges "two or more distinct and separate offenses in a single count." *Schroeder,* 167 Ariz. at 51, 804 P.2d at 780; *see also State v. Whitney,* 159 Ariz. 476, 480, 768 P.2d 638, 642 (1989) ("The law in Arizona requires that each offense must be charged in a separate count."); Ariz. R.Crim. P. 13.3(a) (requiring separate counts for each offense). The indictment here did not charge two separate assaults in a single count; rather, it merely alleged that Klokic "intentionally placed [Brian M.] in reasonable apprehension of imminent physical injury" by use of a handgun, leaving unspecified the precise act or acts that constituted the alleged assault.

¶ 11 Klokic's objection at trial, and the principal thrust of his argument on appeal, is that, while the indictment only charged a single count, the State, in its proof of this count at trial, presented evidence of two aggravated assaults against Brian M. Previous cases have highlighted the difference between a count of an indictment that is duplicitous on its face and a count that alleges a single criminal act, which the prosecutor attempts to prove with evidence of multiple criminal acts. *See Schroeder,* 167 Ariz. at 54, 804 P.2d at 783 (Kleinschmidt, J., concurring) (explaining the technical inaccuracy and practical peril of characterizing the latter category of indictment, which actually charges only one offense in each count, as "duplicitous"); *see also State v. Anderson,* 210 Ariz. 327, 336–37, ¶ 20, 111 P.3d 369, 378–79 (2005) (explaining that when an indictment charges a single crime, yet evidence of more than one alleged criminal act is presented at trial to prove that crime, there is potential error that is not caused by a duplicitous indictment).

---

2. "Duplicity" in the legal context refers to charging two or more offenses in a single count of an indictment. *State v. Schroeder,* 167 Ariz. 47, 51, 804 P.2d 776, 780 (App.1990).

244

¶ 12 When the text of an indictment refers only to one criminal act, but multiple alleged criminal acts are introduced to prove the charge, our supreme court has sometimes referred to this problem in shorthand as a duplicitous charge rather than a duplicitous indictment. It has further noted, however, that such a flaw potentially presents the same problems as a duplicitous indictment. Depending upon the context, it can deprive the defendant of "adequate notice of the charge to be defended," create the "hazard of a non-unanimous jury verdict," or make it impossible to precisely plead "prior jeopardy [ ] in the event of a later prosecution." *State v. Davis*, 206 Ariz. 377, 389, ¶ 54, 79 P.3d 64, 76 (2003) (quoting *Whitney*, 159 Ariz. at 480, 768 P.2d at 642).

■ ¶ 13 Because the asserted error goes not to the indictment on its face, but to the evidence presented to prove a count of the indictment, Klokic had no basis to object before the evidence was presented. Once the basis for Klokic's objection arose, and before the end of trial, Klokic requested that the court either require the prosecution to elect which of the alleged assaults against Brian M. constituted the offense with which he was charged, or that it instruct the jurors that they must unanimously agree that Klokic committed at least one of the particular assaults alleged. By raising the objection, Klokic preserved the issue. Thus, Klokic's assertion of error was not waived by his failure to raise the issue before trial.

■ ¶ 14 A prosecutor has the discretion to "charge crime in a variety of forms to avoid fatal variance of the evidence." *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 225, 73 S.Ct. 227, 97 L.Ed. 260 (1952). Thus, in drafting an indictment, the State may choose to charge as one count separate criminal acts that occurred during the course of a single criminal undertaking

even if those acts might otherwise provide a basis for charging multiple criminal violations. In such cases, however, if the State introduces evidence of multiple criminal acts to prove a single charge, the trial court is normally obliged to take one of two remedial measures to insure that the defendant receives a unanimous jury verdict. It must either require "the state to elect the act which it alleges constitutes the crime, or instruct the jury that they must agree unanimously on a specific act that constitutes the crime before the defendant can be found guilty." [3] *Schroeder*, 167 Ariz. at 54, 804 P.2d at 783 (Kleinschmidt, J., concurring); *see also Davis*, 206 Ariz. at 390, ¶ 61, 79 P.3d at 77 (holding that the State must make an election where failure to do so risks a non-unanimous verdict); *Hash v. State*, 48 Ariz. 43, 50, 59 P.2d 305, 308 (1936) (stating, in a statutory rape case, that where the evidence "tends to show ... several acts of intercourse ... it is incumbent upon the prosecution to elect which one of such acts it relies upon for a conviction"); *State v. Solano*, 187 Ariz. 512, 520, 930 P.2d 1315, 1323 (App.1996) ("Requiring such an election safeguards a defendant's right to a unanimous jury verdict with respect to the criminal act for which he was tried."); *State v. Counterman*, 8 Ariz. App. 526, 531, 448 P.2d 96, 101 (1968) (holding that if evidence of more offenses than are charged is presented, "the trial court has the duty to require the State to elect upon which of the offenses it relies for conviction").

¶ 15 As explained below, however, it is not error for the trial court to fail to require such curative measures in those instances in which all the separate acts that the State intends to introduce into evidence are part of a single criminal transaction. This principle, sometimes referred to as the "same transaction" test, was first expressed in this state in *Counterman*.

3. California, for example, has a standard jury instruction to be used in such circumstances: The defendant is accused of having committed the crime of ____ [in Count ____]. The prosecution has introduced evidence for the purpose of showing that there is more than one [act][or] [omission] upon which a conviction [on Count ____] may be based. Defendant may be found guilty if the proof shows beyond a reasonable

doubt that [he][she] committed any one or more of the [acts] [or] [omissions]. However, in order to return a verdict of guilty [to Count ____], all jurors must agree that [he][she] committed the same [act][or] [omission] [or] [acts] [or] [omissions]. It is not necessary that the particular [act][or] [omission] agreed upon be stated in your verdict.
CALJIC 17.01 (West 2008).

¶ 16 In *Counterman,* the defendant, while arguing with his wife's parents in their home, fired a revolver at his mother-in-law, narrowly missing her. 8 Ariz.App. at 529, 448 P.2d at 99. The defendant then began to struggle with his father-in-law through several rooms of the house, and eventually he fired the revolver again, this time actually hitting the mother-in-law. *Id.* The defendant was charged and convicted on a single count of assault. He argued on appeal that the trial court should have required the State to elect which one of the two shots constituted the assault for which he was being tried. *Id.* at 530, 448 P.2d at 100.

¶ 17 This court rejected that argument because the rule requiring the court to take such remedial measures "does not apply. 'where a series of acts form part of one and the same transaction, and as a whole constitute but one and the same offense.'" *Id.* at 531, 448 P.2d at 101 (quoting *People v. Jefferson,* 123 Cal.App.2d 219, 266 P.2d 564, 565 (1954)). The *Counterman* court "approve[d] of the principle" used in the California cases to determine when separate acts constituted part of the same criminal transaction and "deem[ed] it applicable" to the facts of that case. *See id.* at 532, 448 P.2d at 102.

¶ 18 Under the California test, multiple acts may be considered part of the same criminal transaction "when the defendant offers essentially the same defense to each of the acts and there is no reasonable basis for the jury to distinguish between them." *People v. Stankewitz,* 51 Cal.3d 72, 270 Cal.Rptr. 817, 793 P.2d 23, 41 (1990) (citation omitted). Under this test, two shots delivered in succession both might be admissible to prove a single count of assault without the need for the court to impose curative measures if there is no basis for distinguishing between the two acts as they relate to the charge against the defendant.

¶ 19 In *Counterman,* for example, the defendant did not offer different justifications that could have been separately believed or disbelieved by the jury for firing the two shots which constituted the assault with which he was charged. 8 Ariz.App. at 528, 448 P.2d at 98. Both shots occurred as part of the same confrontation and there were no other circumstances that suggested the need for separately considering them with respect to the evidence in Counterman's trial. *Id.* at 529, 448 P.2d at 99. Presumably, then, adoption of the California test in similar circumstances would permit a prosecutor to prove a single count of assault by introducing evidence of several individual acts of assault which all occurred as a part of a single criminal episode against the same victim without the need for the court to take the curative measures described above.

¶ 20 The *Counterman* court also opined, however, that the California test is "the same as that applied under A.R.S. § 13–1641 which prohibits the imposition of different punishments for the same offense." *Id.* at 532, 448 P.2d at 102. We, however, cannot reconcile A.R.S. § 13–1641 as it existed at the time that *Counterman* was decided with the California test.

¶ 21 The version of A.R.S. § 13–1641 that existed at that time only prohibited double punishments when a single act "is made punishable in different ways by different sections of the laws." It thus did not apply to criminal episodes involving multiple acts that were punished in the same way by the same section of the criminal laws. Assuming, however, that *Counterman* nevertheless meant to apply that test to the facts of that case to determine whether evidence of both acts could be introduced in support of a single criminal charge without the trial court taking curative measures, the § 13–1641 test is not the same as the California test.

¶ 22 Under the former § 13–1641,[4] two acts would not be part of the same transac-

---

4. Since *Counterman* was decided, A.R.S. § 13–1641 has been significantly changed, and renumbered as A.R.S. § 13–116 (2001). At the time *Counterman* was decided, the section read: "[a]n act or omission which is made punishable in different ways by different sections of the laws may be punished under *either,* but in no event under more than one." A.R.S. § 13–1641 (em-

phases added). As amended, the provision now reads: "[a]n act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent." A.R.S. § 13–116 (emphases added). Thus, the test has evolved from one which seeks to prevent multiple punishments for a single inci-

tion for the purpose of imposing multiple punishments if, after the minimal facts necessary to establish the offense with which the defendant had been charged were omitted from evidence, the remaining evidence nevertheless could constitute a separate and complete criminal offense. *See State v. Schwartz,* 14 Ariz.App. 531, 534, 484 P.2d 1060, 1063 (1971). An application of this test to the facts of *Counterman* demonstrates that the defendant could be punished twice for the episode. In *Counterman,* the defendant took two shots with a handgun. Each of two shots intentionally fired from a handgun—no matter how close in time or conceptually connected to the other—could constitute an individual assault. Even with the facts of the first shot removed, the second shot could be (at least) an intentional placing of another person in reasonable apprehension of imminent physical injury. *See* A.R.S. § 13–1203(A)(2) (2001) (defining assault). In such circumstances, the application of the § 13–1641 test would prevent the two shots from constituting part of the same transaction and thus from being charged as a single count of aggravated assault without the court taking curative measures.

¶ 23 However, because *Counterman* concluded that the two shots *were* part of the same transaction, and thus required the trial court to take no curative measures, the *Counterman* court applied the California test rather than the § 13–1641 test. Perhaps as a result of the dissonance between these two tests simultaneously adopted in *Counterman,* however, many of the Arizona cases discussing this issue, including *Counterman* itself, have failed to provide any detailed analysis for us to follow in applying the California test. Rather, they have summarily decided whether two or more acts are part of the same criminal transaction based on reasoning that is wholly conclusory. *See Counterman,* 8 Ariz.App. at 532, 448 P.2d at 102 (stating, without any analysis, that "[w]e approve of the [same transaction] principle announced in

*[Jefferson]* and deem it applicable in this instance."); *see also Solano,* 187 Ariz. at 520, 930 P.2d at 1323 (stating merely that "Solano's separate encounters with [the victims] before and after the chase, like the separate shootings in *Counterman,* constituted [a] single assault against each victim."); *Schroeder,* 167 Ariz. at 53, 804 P.2d at 782 (failing to apply the "same transaction" test, but instead concluding that any error was not prejudicial); *State v. Keith,* 24 Ariz.App. 275, 278, 537 P.2d 1333, 1336 (1975) (stating merely that "[w] e think that in the case at bar, as in *[Counterman],* the events proved at trial constituted a single transaction.").

¶ 24 Our supreme court's decision in *Davis,* however, does provide a guide for the application of the test. In *Davis,* the defendant was charged with four counts of sexual conduct with a minor. *Id.* at 380, ¶ 7, 79 P.3d at 67. In support of count one, the State offered evidence of two separate instances that occurred on two separate days, in both of which Davis was alleged to have committed the complete offense. *Id.* at 388–89, ¶ 51–52, 79 P.3d at 75–76. Davis had an alibi as to one of those days, and he offered evidence that the victim had sex with someone else on the other. *Id.* at 389, ¶ 58, 79 P.3d at 76. The supreme court concluded that because Davis had an alibi defense for one of the alleged acts, some of the jurors might have believed the alibi defense while others did not, thus presenting the possibility of a non-unanimous jury verdict. *See id.* at ¶ 59, 79 P.3d at 76. In the absence of appropriate curative measures by the trial court, such an error required reversal.

¶ 25 *Davis* acknowledges that it is not reversible error for a trial court to fail to take curative action in circumstances in which there is no reasonable basis for distinguishing between the acts admitted into evidence to establish a single charge. 206 Ariz. at 390, ¶ 65, 79 P.3d at 77. For example, *Davis* explicitly recognizes and implicitly ac-

---

dent to a test that permits multiple punishments, and thus multiple charges, so long as consecutive periods of punishment are not imposed. The current test therefore presupposes that multiple crimes that occur as part of a single criminal episode may be charged separately, and prevents

the effective use of the statute for determining when they may also be charged in a single count as part of a single transaction. Because the current test is not applicable, *Anderson,* 210 Ariz. at 357–58, ¶ 140, 111 P.3d at 399–400, we do not reproduce it here.

cepts the single transaction exception set forth in *Counterman.*

While in *Counterman* the court upheld the defendant's conviction because it determined that the series of events formed a single transaction, such is not the situation in Davis's case. The two acts that the State relied upon to support the charge involving [the victim] occurred approximately eleven days apart and were not part of a single transaction.

*Id.*

¶ 26 In so doing, the *Davis* court contrasted the facts in *Davis* with those in this court's decision in *Schroeder* in discussing how the presence of multiple defenses influences the same transaction test. In *Schroeder,* the defendant was charged with one count of sexually abusing his granddaughter. 167 Ariz. at 48–49, 804 P.2d at 777–78. The trial court admitted evidence of several separate instances of the grandfather's abuse of the granddaughter, all of which occurred during the same evening. *Id.* The court determined that, under the facts at hand, any error in not taking curative measures to insure unanimity would not have been prejudicial because the defendant presented the same defense to each of the sexual acts. *See id.* at 53, 804 P.2d at 782. The court so reasoned because:

[a]ll of the acts were basically the same.... Defendant's *only defense* was that the acts did not occur. Thus, the jury was left with only one issue—who was the more credible of the only two witnesses.... [ T] he jury's verdict here implies that it did not believe *the only defense offered.*

*Id.* (emphases added).

¶ 27 In contrasting the facts of *Schroeder* to its own facts, the *Davis* court noted that the alleged acts in *Davis* "occurred eleven days apart, and, unlike the defendant in *Schroeder, Davis offered more than one defense....* Thus, the two distinct acts here differ from the evening's events in *Schroeder,* and call for a different conclusion." *Davis,* 206 Ariz. at 389, ¶ 58, 79 P.3d at 76 (emphasis added).

¶ 28 We recognize that unlike *Davis,* and like *Solano* and *Counterman,* both of the acts alleged here occurred during a single episode between the defendant and his victim. We further recognize that under the facts presented here and in *Solano* and *Counterman,* the trial court may have concluded that the separate acts of the defendant may have caused only one instance of apprehension of imminent physical injury in the victim that endured throughout his encounter with the defendant. But, even if this were so, liability for assault is not merely the function of causing apprehension in another. The jury still must unanimously determine that an unjustified act of the defendant caused that apprehension in a manner fulfilling the statutory elements of the crime for which the defendant was charged. It is for this reason that the facts that surround the separate acts of the Defendant, and whether they give rise to separate defenses, are fundamental to the inquiry of whether the events can be part of a single transaction even if the separate acts only caused a single result and were both part of a single criminal undertaking.

¶ 29 Klokic's argument is that, as in *Davis,* the separate facts surrounding the two alleged acts of assault that were admitted into evidence against him gave rise to different defenses and required the court to take curative measures before admitting evidence of both to prove a single assault. Klokic maintained as an initial defense that he never pointed the handgun at Brian M. or his passenger, either while the vehicles were in motion or during the street altercation. But, as he was permitted to do, Klokic also offered multiple alternative defenses to the two acts. If the jury concluded that Klokic drew his gun while the cars were in motion, Klokic alleged that he did so in response to Brian M. throwing a bottle at him and his passengers and thus that he acted in defense of himself and his passengers. If the jury concluded that Klokic drew his gun during the street altercation, Klokic alleged that he did so in response to Brian M. threatening his passenger with a wrench and thus that Klokic acted in defense of his passenger.

¶ 30 Thus, as in *Davis,* although some jurors might have dismissed Klokic's claims across the board, it is entirely possible that different jurors believed different facts with respect to each of the acts. Some jurors might have concluded that Klokic pointed the handgun at Brian M. during the chase while others might have concluded that he did so only during the street altercation. Likewise, some jurors might have concluded that one of the acts was justified, while other jurors might have concluded that the other act was justified, and a third set might have concluded that neither act was justified. Thus, there is a distinct possibility that the jury was not unanimous as to the act or acts that gave rise to Klokic's criminal liability on count one. As *Davis* establishes, this possibility alone is sufficient to require reversal.

¶ 31 As mentioned above, Davis had an alibi defense to one of the two alleged acts that were alleged to constitute count one. This, in turn, is what gave rise to the possibility of a non-unanimous jury verdict.

> We think it possible that some jurors may have believed Davis's alibi defense and convicted him for an offense on January 18, while other jurors may have convicted him for the Super Bowl weekend offense, based on the doctor's testimony that [the victim] had engaged in sex within the preceding week. Because we cannot be certain which offense served as the predicate for the conviction, we conclude that the real possibility of a non-unanimous jury verdict exists.

*Davis,* 206 Ariz. at 390, ¶ 59, 79 P.3d at 77. 18

¶ 32 This reasoning makes clear that, even when both events occur as part of a larger criminal episode, acts may not be considered part of the same criminal transaction if the defendant offers different defenses to each act or there is otherwise a reasonable basis for distinguishing between them. As noted, when the State introduces evidence of more than one criminal act to prove a single count, it raises the possibility that the defendant's right to a unanimous jury verdict under the Arizona Constitution may be violated. *See* Ariz. Const. art. II, § 23 ("In all criminal cases the unanimous consent of the jurors shall be necessary to render a verdict.").

This is because, in such cases, it is possible for the jury to unanimously agree that the defendant committed the offense charged without unanimously agreeing as to which of the alleged criminal acts the defendant committed to complete the offense. *See Solano,* 187 Ariz. at 519–20, 930 P.2d at 1322–23. When this happens, *Davis* explains, a court "cannot be certain which offense served as the predicate for the conviction ... [and] the real possibility of a non-unanimous jury verdict exists." 206 Ariz. at 390, ¶ 59, 79 P.3d at 77. That possibility, unless remedied, is error. *See id.* at ¶¶ 61–64 (noting that "the resulting risk that the jury returned a non-unanimous verdict constituted error").

¶ 33 Such a possibility did not present itself in *Counterman* because Counterman did not argue that the two acts gave rise to different defenses or otherwise assert a reasonable basis to distinguish between the acts. Thus, we determined that those acts were part of the same transaction.

¶ 34 In *Solano,* as in *Counterman,* the defendant offered neither different defenses nor a reasonable basis to distinguish between the two acts that had been admitted to establish the charge. In that case, the defendant pointed a pistol at three occupants of a car, who thereupon fled in the car. *Solano,* 187 Ariz. at 514, 930 P.2d at 1317. The defendant chased them until the victims crashed, after which the defendant fired into the car, killing one of the occupants. *Id.* at 514–15, 930 P.2d at 1317–18.

¶ 35 In addition to murder, the defendant was charged with two counts of aggravated assault, one for each of the other two occupants. *Id.* at 515, 930 P.2d at 1318. The defendant argued, as did Counterman, that there were, in fact, "two separate acts of aggravated assault against each victim, one before and the other after the high-speed chase." *Id.* at 519, 930 P.2d at 1322. He contended, as did Counterman, "that this evidence presented the risk of a non-unanimous jury verdict because it would be impossible to tell whether the jurors unanimously agreed that he committed an aggravated assault as to each victim prior to or after the chase." *Id.*

¶ 36 As in *Counterman*, however, the defendant did not deny pointing his weapon at the victims either before or after the chase, he did not deny that the acts occurred as part of a single surrounding the two acts gave rise to different defenses. Rather he maintained at trial that he "merely wanted to scare the occupants of the [victims'] vehicle because [the defendant] believed the [victims] to be rival gang members." *Id.* at 515, 930 P.2d at 1318. We are skeptical that this explanation might constitute a defense to the aggravated assault charges, but to the extent that it did, it was the same defense offered to justify both acts and offered no basis to distinguish between them. We thus affirmed the trial court's refusal to give a unanimity instruction because we agreed that these were not separate encounters but rather "constituted single assaults against each victim." *Id.* at 520, 930 P.2d at 1323.

¶ 37 In this case, Klokic both denied drawing the handgun on either occasion and also, in the alternative, asserted different justifications for each time he drew the handgun. It is the possibility that the jury would disagree as to which of Klokic's acts gave rise to his criminal liability, a possibility raised by these different defenses, that is determinative for us here as it was for the supreme court in *Davis*.

¶ 38 "Because we cannot be certain which offense served as the predicate for [Klokic's] conviction, we conclude that the real possibility of a non-unanimous jury verdict exists." *Davis*, 206 Ariz. at 390, ¶ 59, 79 P.3d at 77. Thus, the separate acts introduced to establish the single count against Klokic were not part of the same criminal transaction. Klokic was thus entitled to either a prosecutorial election between the separate criminal acts or a jury instruction requiring unanimity. In providing neither, the trial court committed error.

## CONCLUSION

¶ 39 For the foregoing reasons, we reverse Klokic's conviction and remand for a new trial.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and DIANE M. JOHNSEN, Judge.

