NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

JOSHUA EUGENE PATTON, *Appellant.*

No. 1 CA-CR 13-0056
FILED 4-15-2014

---

Appeal from the Superior Court in Coconino County
No. S0300CR2011-00941
The Honorable Mark R. Moran, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

White Law Offices, PLLC, Flagstaff
By Wendy F. White
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Margaret H. Downie joined.

---

**B R O W N**, Judge:

¶1        Joshua Patton appeals his conviction and sentence for one count of misconduct involving weapons.  He challenges the sufficiency of the evidence and asserts the State improperly relied on a duplicitous charge.  For the following reasons, we affirm.

### BACKGROUND

¶2        In December 2011, Patton and Michael Calderon traveled to Page, Arizona to attend Austin Joe's high school graduation.  After the ceremony, Patton, Calderon and Joe returned to Joe's house, where Joe's sister saw Patton and Calderon exchange a Glock .40 handgun ("the gun").  Interested in buying marijuana, Patton, Calderon and Joe met with "Cyrus," one of Joe's friends, who took them to "Sergio's" trailer, but Sergio refused to sell marijuana to Cyrus.  Patton, Calderon and Joe then decided to try to obtain the marijuana  themselves.

¶3        As they approached Sergio's trailer, Calderon heard Patton declare that "if [Sergio] didn't have weed, then [he] would have money," so Calderon handed Patton the gun because Calderon "didn't feel like robbing [Sergio]."  When Sergio answered the door, Patton brandished the gun and told Sergio to "get inside" the home.   Patton pressed the gun against Sergio's stomach, telling him "don't make me pull the trigger," and pushed him into the trailer.  After Calderon and Joe entered the trailer, Patton took a jar that contained eleven one-gram baggies of marijuana and a "little over $400 in [currency]."

¶4        On their way back to Joe's house, Patton gave Calderon some of the cash and returned the gun to him.  Over the next several hours, they proceeded to smoke all the marijuana.  When Calderon went to retrieve something from a car parked outside Joe's home, Sergio and his cousin pulled up in a truck and opened fire on Calderon, who returned fire with the gun.  Calderon suffered a gunshot wound, but returned to the trailer and told Patton and Joe he had been shot.  Hearing sirens,

Patton and Calderon "started running" and ended up at a nearby library, where Calderon cleaned his gunshot wound in the bathroom. Calderon testified that he didn't remember what happened to the gun after he was shot, he just knew "by the time we got to the library, it was gone."

¶5        A short time later Patton and Calderon were taken into custody, and a police officer discovered Patton's shoe prints in an area near the library where the gun was partially covered by dirt. There were fifteen rounds in the magazine and one in the chamber. Subsequent testing revealed that six Glock .40 shell casings were found near Joe's house, where Calderon had returned fire at Sergio and his cousin. DNA testing on the gun revealed Patton's DNA as being the "major contributor" and Calderon's, a "minor contributor."

¶6        Patton, Calderon and Joe were each charged with one count of burglary in the first degree, armed robbery, misdemeanor theft, endangerment, and two counts of aggravated assault. Patton and Calderon were also charged with a single count of misconduct involving weapons. Additionally, the State filed an allegation of historical prior felony convictions against Patton. Prior to trial, Calderon and Joe each plead guilty to a reduced charge of aggravated robbery in exchange for agreeing to testify against Patton.

¶7        Patton's case proceeded to trial. He denied taking part in the robbery or smoking the marijuana. At the close of the State's case, the trial court granted a judgment of acquittal on one of the aggravated assault counts and the endangerment count. Patton then testified he had never seen the gun prior to December 20, 2011. He admitted to three prior felony convictions, that he was on probation at the time of the incident, and he was legally prohibited from possessing a firearm.

¶8        The jury convicted Patton of misconduct involving weapons, but was unable to reach a verdict on the theft charge. The jury found Patton not guilty of burglary in the first degree, armed robbery, and aggravated assault. The trial court sentenced Patton to a presumptive term of ten years' imprisonment. Patton timely appealed.

## DISCUSSION

¶9        Patton challenges his conviction for misconduct involving weapons on the basis that there was insufficient evidence to sustain his conviction. "The question of sufficiency of the evidence is one of law, subject to de novo review on appeal." *State v. West*, 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011). We review the trial record to determine

whether substantial evidence supports the convictions and view the facts in the light most favorable to sustaining the jury's verdicts. *State v. Cox*, 217 Ariz. 353, 357, ¶ 22, 174 P.3d 265, 269 (2007) (internal quotations and citations omitted). "Substantial evidence is evidence that 'reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt.'" *Id*. (citation omitted). The evidence may be direct or circumstantial, and it is well established that each has equal probative value. *State v. Pettit*, 194 Ariz. 192, 197, ¶ 23, 979 P.2d 5, 10 (App. 1998).

**¶10** Patton was indicted for misconduct involving weapons based on knowingly possessing a gun on or about December 20, 2011 while being a prohibited possessor. Thus, the State was required to prove that Patton knowingly possessed a deadly weapon and that his right to possess a weapon was prohibited at that time based on a prior felony conviction. Ariz. Rev. Stat. ("A.R.S.") § 13-3102(A)(4). Patton does not dispute that he was a prohibited possessor or that the gun at issue was a deadly weapon. Instead, he argues that because the jury acquitted him of burglary, robbery, and aggravated assault, the jury necessarily concluded that he "was not guilty of using a gun during the alleged robbery." Thus, Patton urges us to focus our attention only on whether he possessed the gun at Joe's house.

**¶11** Our obligation, however, is to view all the evidence presented at trial in the light most favorable to sustaining the conviction. *See Cox*, 217 Ariz. at 357, ¶ 22, 174 P.3d at 269. That the jury acquitted Patton of armed robbery does not mean it found he was not guilty of every element of that offense. Furthermore, jurors are permitted to return inconsistent verdicts. *See State v. Zakhar*, 105 Ariz. 31, 32, 459 P.2d 83, 84 (1969). As such, we generally "disregard an acquittal" because "in the privacy of the jury room either 'leniency or compromise' may lead jurors to acquit a defendant whom they believe to be guilty.'" *State v. Williams*, 233 Ariz. 271, 274, ¶ 10, 311 P.3d 1084, 1087 (App. 2013) (quoting *Zakhar*, 105 Ariz. at 32-33, 459 P.2d at 84-85); *see also United States v. Powell*, 469 U.S. 57, 68 (1984) (explaining a reviewing court will not assume what the jury "really meant" by its acquittal when determining the sufficiency of evidence supporting another charge). Therefore, we will not speculate as to why the jury acquitted Patton on all charges except misconduct involving weapons.

**¶12** Arizona law defines "possess" as "knowingly [having] physical possession or otherwise to exercise dominion or control over property." A.R.S. § 13–105(34). Consistent with this definition, the jury was instructed as follows:

'Possess' means knowingly to have physical possession or otherwise to exercise dominion or control over property. 'Possession' means a voluntary act if the defendant knowingly exercised dominion or control over property. The terms 'dominion' and 'control' carry their ordinary meaning, such that dominion means 'absolute ownership' and control means to 'have power over.'

¶13        At trial, Sergio testified that Patton was holding the gun while robbing him and that no one else had possession of a handgun other than Patton during the robbery. Calderon and Joe both corroborated Sergio's account that Patton had possession of the gun during the robbery. Patton's shoeprints led law enforcement to the location of the gun and the State presented evidence that DNA found on the gun was consistent with Patton's DNA as being the "major contributor." We conclude there was substantial evidence supporting Patton's conviction for misconduct involving weapons.

¶14        Patton also argues that his due process rights were violated during the State's closing argument when the prosecutor suggested that either of two separate acts constituted misconduct involving weapons:

The defendant is charged with weapons misconduct because he's a prohibited possessor; because he has those three [prior felony] convictions and never had his rights restored, he's not allowed to have a gun at all, let alone use one in a robbery. His possession of a gun during that robbery means that he's guilty of weapons misconduct. You have a jury instruction for it.

And certainly—the robbery is certainly the more egregious incident of weapons misconduct, but his handling that weapon earlier in the day, as the other two people and [Joe's sister] testified to, *is also an incident of weapons misconduct for which he's guilty*.

(Emphasis added.) Based on the prosecutor's reference to Patton's handling the gun at Joe's house prior to the alleged robbery, Patton asserts that his right to a unanimous jury verdict and Sixth Amendment rights were violated. Because Patton failed to raise these interrelated arguments in the trial court, we review his claims for fundamental error only. *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20, 115 P.3d 601, 607 (2005). Fundamental error review involves a three-step analysis. First, the

defendant "must prove error." *Id.* at 568, ¶ 23, 115 P.3d at 608. Second, the defendant must prove that the error is "fundamental"—"that error goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *Id.* at ¶ 24. Third, the defendant must "demonstrate that the error caused him prejudice." *Id.* at ¶ 26.

**¶15** "A duplicitous charge exists '[w]hen the text of an indictment refers only to one criminal act, but multiple alleged criminal acts are introduced to prove the charge.'" *State v. Paredes-Solano*, 223 Ariz. 284, 287, ¶ 4, 222 P.3d 900, 903 (App. 2009) (quoting *State v. Klokic*, 219 Ariz. 241, 244, ¶ 12, 196 P.3d 844, 847 (App. 2008)). "Depending upon the context, [a duplicitous charge] can deprive the defendant of 'adequate notice of the charge to be defended,' create the 'hazard of a non-unanimous jury verdict,' or make it impossible to precisely plead 'prior jeopardy [ ] in the event of a later prosecution.'" *Klokic*, 219 Ariz. at 244, ¶ 12, 196 P.3d at 847 (quoting *State v. Davis*, 206 Ariz. 377, 389, ¶ 54, 79 P.3d 64, 76 (2003)); *see also* Ariz. Const. art. II, § 23 ("In all criminal cases the unanimous consent of the jurors shall be necessary to render a verdict."). Multiple events are not duplicitous, however, if they are "part of one and the same transaction, and as a whole constitute but one and the same offense." *Klokic*, 219 Ariz. at 245, ¶ 17, 196 P.3d at 848 (quoting *State v. Counterman*, 8 Ariz.App. 526, 531, 448 P.2d 96, 101 (1968)).

**¶16** We need not address whether the different events the prosecutor referenced relating to Patton handling the gun were part of the "same transaction" because any potential error was not fundamental or prejudicial. *See State v. Ramsey*, 211 Ariz. 529, 533, ¶ 7, 124 P.3d 756, 760 (App. 2005) (affirming conviction because defendant failed to articulate how his defense was impaired or how he was prejudiced by the indictment); *State v. Whitney*, 159 Ariz. 476, 480, 768 P.2d 638, 642 (1989) (concluding that a defendant was not denied an "essential right to his defense" when his defense was a denial that the alleged acts had occurred). Patton's defense was that he did not touch or handle the gun on December 20, 2011. When a defendant presents an all-or-nothing defense staked on witness credibility, the defendant is not prejudiced by duplicitous charges. *See e.g., Whitney*, 159 Ariz. at 480, 768 P.2d at 642; *State v. Schroeder*, 167 Ariz. 47, 53, 804 P.2d 776, 782 (App. 1990). Patton presented an all-or-nothing defense and thus he was not adversely affected by the State's comment. Accordingly, Patton has not met his burden of showing fundamental, prejudicial error.

## CONCLUSION

**¶17**     Based on the foregoing, we affirm Patton's conviction and sentence.



Ruth A. Willingham · Clerk of the Court
FILED: MJT