NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

EDWARD JOE CONNATSER,[1] *Appellant*.

No. 1 CA-CR 15-0446
FILED 10-25-2016

Appeal from the Superior Court in Maricopa County
No.  CR2014-111108-001
The Honorable Erin Otis, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

---

[1]     The record reflects this is the correct spelling of Defendant's last name.  We amend the caption accordingly.

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Peter B. Swann joined.

---

**O R O Z C O**, Judge:

**¶1** Edward Joe Connatser (Defendant) appeals his convictions and sentences imposed after a jury found him guilty of assault, threatening or intimidating, and aggravated assault, all domestic violence offenses. For the following reasons, we affirm.

## FACTS[2] AND PROCEDURAL HISTORY

**¶2** When Defendant's fiancée, MG, returned to the home they shared, she confronted him in the garage about her suspicions that he was pursuing a romantic relationship with another woman. MG told Defendant to leave the home immediately and Defendant demanded she return her engagement ring to him. MG refused, and Defendant spit in her face and "head butted" her. MG ran into the house and locked the door behind her.

**¶3** Defendant began banging on the locked door; fearing the door would break open, MG ran to a bedroom and locked the bedroom door. Meanwhile, Defendant had broken through the garage door and proceeded to the bedroom, where he found MG. He broke down the bedroom door, entered the room, and he and MG scuffled.

**¶4** MG fell to the floor on her back, and, while straddling her with his knees and pinning her arms down, Defendant pulled MG's hair with one hand, choked her with the other, and yelled at her. MG could not breathe. Defendant stopped choking MG and, while still gripping her hair, pushed the side of her face against the floor. Defendant then got up and "pulled [MG] around the room" by her hair. MG again fell on her back, Defendant straddled her, choked her with both hands, and threatened to

---

[2] We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant. *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

kill her. MG could not breathe, and she thought she was going to die until Defendant eventually let go and left the room.

¶5        MG called 9-1-1, but Defendant returned to the bedroom and MG hung up before completing the call. When the 9-1-1 operator returned the call, Defendant answered the phone. Realizing the police would be on their way, Defendant instructed MG to change her clothes and "put something on that . . . would cover [her] arms." Gilbert police officers responded and subsequently arrested Defendant. A medical examination revealed MG sustained multiple physical injuries resulting from Defendant's straddling her, pushing her face and pinning her arms to the floor.

¶6        The State charged Defendant with assault, a class one misdemeanor (Count 1), threatening or intimidating, a class one misdemeanor (Count 2), and two counts of aggravated assault, class four felonies (Counts 3 and 4), which related respectively to the first and second choking incidents. At trial, Defendant testified that MG physically confronted him about his purported infidelity, and they fell during a struggle for his car keys, which were in MG's pocket. Defendant testified he pinned MG to the floor "to restrain her, prevent her from hitting me, and prevent her from hurting herself." He denied intentionally pulling MG's hair and head-butting or choking her.

¶7        The jury returned a not guilty verdict for Count 3. The jury found Defendant guilty on the remaining counts, finding they constituted domestic violence offenses. The trial court imposed a suspended sentence and placed Defendant on concurrent three-year terms of supervised probation, including sixty days of incarceration in the county jail. Defendant timely appealed and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1, 13-4031, and -4033.A.1 (West 2016).[3]

**DISCUSSION**

**I.        Preclusion of Evidence Demonstrating MG's Bias and Motive**

¶8        The day before trial, Defendant disclosed a City of Tempe police report that indicated MG, who was anticipated to testify, was issued a citation a year earlier for false reporting to law enforcement. According

---

[3]        Absent material changes from the relevant date, we cite a statute's current version.

to the police report, MG had noticed the Defendant's car at a hotel and drove it away, because she believed Defendant was at the hotel with another woman. MG reported the car stolen in order "to punish him."

¶9        Defendant moved to dismiss the current charges if it were discovered MG was convicted of the false reporting offense, arguing the State failed to abide by its disclosure obligations. *See* Ariz. R. Crim. P. 15.1.d.(1). In the event MG was not convicted, Defendant requested an in limine ruling permitting admission of MG's "motive, bias testimony." *See* Ariz. R. Evid. 404(b).

¶10        The State avowed that it had searched MG's criminal background and discovered no convictions. The State sought to preclude evidence of MG's citation, arguing Defendant's disclosure of the police report was untimely, and, because MG was not convicted of false reporting, the citation was not admissible for impeachment purposes. The State further argued the citation was inadmissible other act evidence.

¶11        The trial court ordered the police report itself precluded, but determined Defendant, pursuant to Arizona Rule of Evidence (Rule) 608, could ask MG whether she had in the past been cited for false reporting. The trial court prohibited any questions regarding the circumstances of the false statements, including that they were made in connection with Defendant's past philandering. Accordingly, MG testified as follows during direct examination by the State:

> Q. Have you ever been cited for lying or providing false information to the police?
>
> A. Yeah, I did.
>
> Q. And did you complete classes to resolve that citation?
>
> A. Yes.

¶12        During cross-examination of MG, the following transpired:

> Q. You're not always a truth teller, are you?
>
> A. I -- yeah, I like to -- I mean, I guess I'm not perfect, no. I know I've lied at times, yes.
>
> Q. You lie at times, correct?
>
> A. Right.

4

Q. So when I say you're not always a truth teller, I'm correct, right?

A. I'm not lying today.  I mean -- just --

Q. I'll say it again.  If I make the statement, you're not always a truth teller, am I correct?

A. Correct. I've lied at times in my --

Q. With not always being a truth teller, is it fair for me to say that you haven't always told the whole story or the whole truth?

A. I guess you could say that.

Q. I can say that, or you guess I can say that?  I want to be specific when you talk to the jurors.

A. I'm sorry. Repeat the question.

Q. Withdrawn.  You have lied to police officers in the past, correct?

A. Yeah.  I -- yeah.

Q. You shake your head as if you're confused.  I want to -- have you lied to police officers in the past?

A. Yes.

Q. Do you feel that I'm harassing you into saying that?

A. No.

Q. Is that of your own free will?

A. Yes.

Q. Is there type [sic] of holding something over your head?

A. No.

Q. When I ask you that question?

A. No.

Q. Are you in fear of [Defendant] as I ask you that question?

A. No.

Q. Is there some type of punishment or threat physically against you as you answer that question?

A. No.

Q. With regard to lying to police officers in the past, [the] prosecutor touched upon it and said that you were actually cited for that, correct?

A. Correct.

Q. So this is something that was cited by law enforcement, correct?

A. Right.

Q. Is that something that you disputed and said, hey, I'm innocent of that? Was that a false charge against you?

A. I - I'm not sure how --

Q. When the police cited you for lying, was that a false charge or was that a true charge?

A. It was a true charge.

Q. It was a true charge. Did you dispute that with police, that you lied?

A. With the police, no.

Q. With the police, with the courts, with anyone?

A. There -- I did a diversion program which I did not plead guilty to.

Q. You did a diversion?

A. Yes.

Q. Fair for me to say a diversion is to avoid prosecution or divert away from prosecution, you took classes, correct?

6

A. Correct.

Q. Because you don't want that on your record, right?

A. Right.

. . .

Q. Okay. Fair for me to say that you were pretty hot when you were speaking with that officer?

A. Yes.

Q. And when I say "hot," I mean angry, hurt, disappointed, all of those type of emotions; is that fair for me to say?

A. Yes, it is.

Q. And for whatever you felt [Defendant] had did, [sic] you wanted him to take responsibility for that; fair for me to say?

A. Yes.

¶13     Defendant argues the trial court improperly limited his cross-examination of MG by denying him the opportunity to establish that she falsely reported the car theft because she was angry at Defendant for cheating on her. Defendant asserts the precluded evidence was admissible under Rule 404(b) to establish MG's "motive and bias," and that MG wanted "to punish Defendant for being unfaithful."

¶14     We review a trial court's evidentiary rulings for an abuse of discretion. *State v. McGill*, 213 Ariz. 147, 156, ¶ 40 (2006); *State v. Sucharew*, 205 Ariz. 16, 21, ¶ 9 (App. 2003). An abuse of discretion occurs when "the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Chapple*, 135 Ariz. 281, 297 n.18 (1983), *superseded on other grounds by statute*, A.R.S. § 13-756, *as recognized in State v. Goudeau*, 239 Ariz. 421, ___, ¶ 154 (2016).

¶15     Rule 404(b) prohibits evidence of other acts "to prove the character of a person in order to show action in conformity therewith," but allows such evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b); *see State v. Jeffers*, 135 Ariz. 404, 417 (1983) ("The list of 'other purposes' in Rule 404(b) . . . is not exclusive; if evidence is relevant for any purpose other than that of showing [a

person's] criminal propensities, it is admissible even though it refers to his prior bad acts.").  Rule 608 provides, in pertinent part:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness.

Ariz. R. Evid. 608(b)(1).

¶16        The evidence tying the false reporting citation to Defendant's prior infidelity was properly precluded under Rule 404(b), because the jury, upon considering such evidence, could have impermissibly inferred MG untruthfully testified for purposes of punishing Defendant, just as she was untruthful a year earlier in response to finding Defendant's car parked at a hotel.  This "proclivity" evidence is precisely what Rule 404(b) seeks to avoid.   Furthermore, the precluded evidence was not necessary for Defendant to argue that MG had a motive to falsely accuse Defendant in this case.   The trial evidence established that she was angry about Defendant's phone conversation with another woman and wanted him to leave the home immediately.    Moreover, additional evidence of Defendant's infidelity a year earlier would have been prejudicial to him in this case, as Defendant conceded when the parties discussed the citation evidence with the court.   Finally, pursuant to Rule 608, the trial court properly tailored the admission of MG's character trait for untruthfulness by precluding the police report itself, yet allowing Defendant to inquire into the fact that MG was cited for false reporting.  Consequently, the court did not abuse its discretion in limiting the evidence relating to MG's previous citation for false reporting.

¶17        Defendant also contends that the State, by failing to disclose the police report regarding MG's false reporting, violated its disclosure obligations under Arizona Rule of Criminal Procedure (Criminal Rule) 15 and *Brady v. Md.*, 373 U.S. 83 (1963).

¶18        We disagree.  First, Criminal Rule 15.1.b.(1) does not apply to witnesses' arrest records; rather, it requires the prosecutor to disclose *felony convictions* of witnesses whom the State intends to call at trial.  Ariz. R. Crim. P. 15.1.b.(1).  Second, nothing in the record indicates the prosecutor was aware of the police report, which was generated by a law enforcement

agency different from the one that investigated this case. *See* Ariz. R. Crim. P. 15.1.b ("[T]he prosecutor shall make available to the defendant . . . material and information within the prosecutor's possession or control."); Ariz. R. Crim. P. 15.1.f.(2) (prosecutor's disclosure obligations extend to material and information in the control of "[a]ny law enforcement agency which has *participated in the investigation of the case* and that is under the prosecutor's direction or control"). Indeed, Defendant admitted in superior court that "the prosecutor didn't see [the police report] because [MG] had to have participated in some type of diversion program that allowed her to escape having an actual conviction on her record." The prosecutor, therefore, did not have possession or control of the Tempe police report, and, consequently, was not obligated to disclose it. *Cf. State v. Briggs*, 112 Ariz. 379, 383 (1975) (addressing defendant's assertion of a *Brady* violation and concluding trial court properly did not require the State to obtain victim's FBI "rap sheet" because FBI "is not under the control of the prosecutor").

¶19 Finally, Defendant cursorily mentions a purported Confrontation Clause and due process violation, but he makes no meaningful substantive argument that the court's evidentiary ruling violated either of these constitutional rights. As his cross-examination of MG illustrates, *see supra* ¶ 12, Defendant impeached MG with her false reporting citation and elicited testimony that MG was angry about Defendant's telephone call with another woman. Therefore, Defendant introduced evidence supporting his argument that MG had a motive to testify untruthfully about her physical altercation with Defendant. Defendant's constitutional rights to confront MG and to due process were not violated. *State v. Bracy*, 145 Ariz. 520, 533 (1985) (in determining whether a limitation on cross-examination requires reversal, we consider whether the "jury is otherwise in possession of sufficient information to assess the bias and motives of the witness") (citation omitted).

## II.    Duplicitous Charge

¶20 Count 1 charged Defendant with intentionally or knowingly causing physical injury to MG. Because the State presented evidence of numerous physical injuries resulting from the altercation between Defendant and MG, Defendant argues the guilty verdict for Count 1 could have been non-unanimous. That is, according to Defendant, any one or more of the jurors could have based his or her individual determination of guilt by relying on a physical injury different from those relied upon by one or more of the other jurors.

¶21 A criminal defendant is entitled to a unanimous jury verdict. Ariz. Const. art. 2, § 23. To this end, "Arizona law requires that each separate offense be charged in a separate count, [and] an indictment which charges more than one crime within a single count may be dismissed as duplicitous." *State v. Schroeder*, 167 Ariz. 47, 51 (App. 1990). A duplicitous charge, on the other hand, results when a charging document refers to only one criminal act, but the State introduces more than one criminal act to prove the charged offense. *State v. Klokic*, 219 Ariz. 241, 244, ¶ 12 (App. 2008). A duplicitous charge may be similarly problematic as a duplicitous indictment in that both "can deprive the defendant of 'adequate notice of the charge to be defended,' create the 'hazard of a non-unanimous jury verdict,' or make it impossible to precisely plead 'prior jeopardy [ ] in the event of a later prosecution.'" *Id.* (quoting *State v. Davis*, 206 Ariz. 377, 389, ¶ 54 (2003)).

¶22 When the State introduces evidence of multiple criminal acts to prove an individual charge, a trial court generally must undertake one of two remedial measures to ensure unanimity in a potential guilty verdict. *Id.* at ¶ 14. The court "must either require 'the state to elect the act which it alleges constitutes the crime, or instruct the jury that they must agree unanimously on a specific act that constitutes the crime before the defendant can be found guilty.'" *Id.* (quoting *State. v. Schroeder*, 167 Ariz. at 54. (Kleinschmidt, J., concurring)).

¶23 As Defendant correctly concedes, we review for fundamental error because he did not request the trial court remedy the potential duplicitous charge in Count 1. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). To obtain relief under fundamental error review, Defendant has the burden to show that error occurred, the error was fundamental and that he was prejudiced thereby. *See id.* at 567-68, ¶¶ 20-22. Fundamental error is error that "goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial." *Id.* at ¶ 24. We will not presume prejudice where none appears affirmatively in the record. *See State v. Trostle*, 191 Ariz. 4, 13-14 (1997). "Before we may engage in a fundamental error analysis, however, we must first find that the trial court committed some error." *State v. Lavers*, 168 Ariz. 376, 385 (1991).

¶24 Here, the trial court was not obligated to sua sponte "remedy" the potential of a non-unanimous jury verdict because, based on Defendant's justification defense to the separate criminal acts of straddling MG and pinning her arms and face to the floor, these acts were "part of a

single criminal transaction" that caused MG's physical injuries.[4] *See Klokic*, 219 Ariz. at 245, ¶ 18 ("[M]ultiple acts may be considered part of the same criminal transaction 'when the defendant offers essentially the same defense to each of the acts and there is no reasonable basis for the jury to distinguish between them.'") (quoting *People v. Stankewitz*, 51 Cal.3d 72, 100 (1990)).  No error, fundamental or otherwise, occurred.

## CONCLUSION

¶25      Defendant's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[4]      The State did not assert that the head-butt amounted to assault; indeed, the State conceded during its initial closing argument that the head-butt was unintentional.  And, although MG's scalp was sore from having her hair pulled, the record does not reflect that MG was injured by Defendant pulling her hair or spitting on her.  In any event, the State did not argue that MG sustained injuries from the head-butt or the hair pulling.