IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

THE STATE OF ARIZONA,
*Appellee*,

*v.*

TIMOTHY EDWARD EGAN,
*Appellant*.

No. 2 CA-CR 2024-0174
Filed December 30, 2025

———————————————

Appeal from the Superior Court in Pinal County
No. S1100CR202400040
The Honorable Danielle Harris, Judge

**AFFIRMED**

———————————————

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Karen Moody, Assistant Attorney General, Tucson
*Counsel for Appellee*

Kate Milewski, Pinal County Public Defender
By Kevin D. Heade, Defender Attorney, Florence
*Counsel for Appellant*

---

## OPINION

Presiding Judge Brearcliffe authored the opinion of the Court, in which Chief Judge Staring and Judge Eckerstrom concurred.

---

B R E A R C L I F F E, Presiding Judge:

**¶1**　　　Timothy Egan appeals from his conviction and sentence for aggravated assault. He argues he suffered prejudice from a duplicitous charge and an improper jury instruction, and that prosecutorial error denied him a fair trial.[1] We affirm.

### Factual and Procedural Background

**¶2**　　　We view the facts and any inferences drawn therefrom in the light most favorable to upholding the jury's verdict. *State v. Bible*, 175 Ariz. 549, 595 (1993). On January 4, 2024, E.L., a guard at the Pinal County jail, arrived at cell twenty-five to announce court appearance times to Egan and the other inmates inside. Upon hearing his name, Egan, stood up and said, "I have been here since 2 o'clock yesterday, I am out of here." As Egan walked toward the door, E.L. extended his hand and told him "No have a seat, stop." Egan "swiped" E.L.'s hand away, and E.L. pushed Egan back into the cell. Egan then "gathered himself [up]," and E.L. ordered him to turn around to be handcuffed. Egan rushed at E.L. "in an aggressive manner" with closed fists. In quick succession, E.L. struck Egan, and Egan hit, grabbed, and scratched at E.L. Egan struck E.L.'s head, face, and body

---

[1]Egan also originally argued the number of jurors at his trial was constitutionally insufficient. In his reply brief, however, Egan acknowledges that the United States Supreme Court case *Williams v. Florida* controls "the current state of the law concerning this issue." 399 U.S. 78, 100 (1970) (12-person jury not "an indispensable component of the Sixth Amendment"). Although Egan broadly asserts that *Williams* "was wrongly decided," he has provided no basis—nor do we have the authority—to disturb precedent set by the Supreme Court. *See Pool v. Superior Ct.*, 139 Ariz. 98, 108 (1984) (Arizona courts obligated to follow Supreme Court precedent "with regard to the interpretation of the federal constitution"). This argument therefore fails on the merits.

breaking E.L.'s glasses, bruising his head and face, and scratching the top of E.L's forehead.

¶3        From outside the cell, Officer Jones saw Egan "walking aggressively" toward E.L. and "trying to exit." Officer Jones told Officer Hernandez that E.L. needed help. Jones herself entered the cell to help E.L. restrain Egan, who was "swinging his arms[ and] kicking," and saw Egan strike E.L. Hernandez then went into the cell and saw Egan "throwing punches" at E.L. while E.L. was trying to hold Egan down. E.L. tased Egan once, and then again, after Egan continued to struggle. Hernandez ultimately restrained Egan, and Jones handcuffed him.

¶4        Egan was charged with one count of aggravated assault. Following a two-day trial, the jury found him guilty, and the trial court sentenced him to four years in prison. Egan appealed, and we have jurisdiction under article VI, § 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## Discussion

### I.   Duplicitous Charge

¶5        Egan claims that his right to a unanimous jury verdict was violated because the state only charged him with one count of aggravated assault but "presented evidence of two assaults," resulting in a duplicitous charge. Because Egan failed to object below, we review for fundamental error. *See State v. Escalante*, 245 Ariz. 135, ¶ 12 (2018). Egan thus bears the burden of establishing that error occurred, that the error was fundamental, and that the error caused him prejudice. *See id.* ¶ 21.

¶6        Egan first made contact with E.L. when, as Egan was trying to leave the cell, Egan had "used his right arm to swipe up and hit [E.L.'s] arm out of [the] way." After E.L. pushed Egan back into the cell and ordered him to turn around to be handcuffed, Egan charged at E.L., thrashing and making contact with E.L.'s head, face, and body.

¶7        During Egan's testimony, when he was asked why he had commanded Egan to prepare to be handcuffed after pushing him back into the cell, E.L. answered that "[Egan had] already assaulted me and I d[id]n't know exactly what his next intentions [we]re going to be . . . My job after being assaulted is . . . I have to get that guy under control." While the security footage played for the jury, E.L. described what was happening in the video: "I am forbidding him from leaving the cell so he assaulted me

and at that moment, I shoved him back into the cell."  In his testimony, Egan denied having touched E.L. as he walked toward the cell door and claimed that self-defense justified his actions after E.L. pushed him back.

**¶8**   In closing, Egan argued that the initial part of the incident—when he had attempted to leave the cell—was "not where the aggravated assault happened.  It is alleged to have happened afterwards."  In rebuttal, the state noted that two assaults had occurred:  "[defense] counsel wants you to believe that somehow the only assault that took place was when the defendant swatted his hand.  Yes.  That is an assault, you are no[t] allowed to put your hand on an officer, but again, another assault occurred in the cell."

**¶9**   A duplicitous charge exists "[w]hen the text of an indictment refers only to one criminal act, but multiple alleged criminal acts are introduced to prove the charge."  *State v. Klokic*, 219 Ariz. 241, ¶ 12 (App. 2008).  The potential dangers of a duplicitous charge include a lack of notice for the charges to be defended, complicating a double jeopardy argument in a later prosecution, and the possibility of a non-unanimous jury verdict.[2] *Id.*  But whether these risks actually arise depends on the context.  *Id.*

**¶10**   Even so, a continuing course of conduct involving multiple criminal acts may be alleged properly in a single count.  *State v. Sanders*, 245 Ariz. 113, ¶ 71 (2018) (evidence of multiple beatings over span of three months properly charged in one count).  The state characterized the two assaults as a continuous act:

> If you are the primary aggressor, which [Egan] was, by approaching [E.L.], swatting his hand and trying to leave a jail cell . . . You don't get to claim self-defense. . . .  He was not obeying orders after he assaulted that officer. . . .  [H]e kept going and going.

Egan acknowledges that "the video given to the jury shows both assaults occurring under a span of 5 seconds."  Nonetheless, he argues that, because he presented two separate defenses—complete denial as to the first assault

---

   [2]Here, because Egan only argues that he was prejudiced by a non-unanimous jury verdict that is the only potential prejudice we will address.  *See* Ariz. R. Crim. P. 31.10(a)(7)(A).

and self-defense as to the second—the acts cannot be considered part of the same transaction.

¶11        In *Klokic* we held that "even when both events occur as part of a larger criminal episode, acts may not be considered part of the same criminal transaction if the defendant offers different defenses to each act." 219 Ariz. 241, ¶ 32.   The state argues that Egan's "two defenses are essentially a single defense to the entire course of action" because "the justification argument relies on whether the jury believed the first defense." But the justification argument did not rely on the jury believing the first defense.  The jury could have believed that Egan did indeed make physical contact with E.L. when he tried to exit the cell, but also that E.L. subsequently exceeded his allowable force to maintain order and therefore that Egan was justified in his later actions.  Consequently, each contact must be treated separately for the purposes of addressing Egan's separate defenses, and they cannot be considered as one continuous act.  *See id.*

¶12        Nonetheless, even though each contact is treated separately in evaluating Egan's asserted defenses, this does not mean the state presented a duplicitous charge.  Egan was charged with committing an aggravated assault that "cause[d] physical injury" to E.L.  "Physical injury" was defined for the jury as "the impairment of physical condition."  If the incident is separated into two distinct assaults, it is clear only the second one would have amounted to the charge described in the indictment.  No one claimed that E.L. suffered an injury to his arm—the only place Egan made contact when he "swiped" at E.L. in his attempt to leave the cell.  The state only presented evidence of physical impairment to E.L.'s face and head from the second assault.  And the state specified in closing argument that "as a result of [Egan]'s actions, [E.L.] sustained injuries to his face and head."  Even Egan, in his closing, rhetorically asked the jury whether E.L. had ever said he was "actually" injured after Egan had "allegedly swatted his hand to try to get to the door," answering, "No.  He never did.  So, there is no aggravated assault at that point.  It would have only been after the pushing."

¶13        Because only one of the identified interactions between Egan and E.L.—the second one—met each element of the crime charged, there was no risk of a non-unanimous jury verdict.  The jury was instructed to only find Egan guilty if the state had proved each element beyond a reasonable doubt.  We presume jurors follow their instructions.  *State v. Martinez*, 230 Ariz. 208 ¶ 40 (2012).  Therefore, although both the state and Egan may have characterized each encounter as an "assault," there was no

error because it is clear, given the charges, evidence and argument, which offense served as the predicate for Egan's conviction. *See Klokic*, 219 Ariz. 241, ¶ 38; *State v. Davis*, 206 Ariz. 377, ¶¶ 59, 61 (2003).

## II. Justification Defense Jury Instruction

**¶14** Egan argues the trial court erred in giving a justification instruction that incorporated a prison officer's allowable use of force during a detention. "We review a trial court's decision to give a jury instruction for an abuse of discretion." *State v. Aragon*, 252 Ariz. 525, ¶ 6 (2022). But we review de novo whether a trial court properly instructed the jury, *State v. Champagne*, 247 Ariz. 116, ¶ 22 (2019), and whether the jury instructions properly stated the law, *State v. Payne*, 233 Ariz. 484, ¶ 68 (2013). We "consider the jury instructions as a whole to determine whether the jury received the information necessary to arrive at a legally correct decision." *State v. Dann*, 220 Ariz. 351, ¶ 51 (2009).

**¶15** Because Egan objected below, if we find that the trial court abused its discretion, we must consider whether the error was harmless. *See State v. Foster*, 258 Ariz. 472, ¶ 25 (2024). A fact-specific inquiry is necessary to determine whether an error is harmless, *State v. Poyson*, 198 Ariz. 70, ¶ 21 (2000), and it must be evaluated within the context of properly admitted evidence, *State v. Fulminante*, 193 Ariz. 485, ¶ 50 (1999). An error is harmless if "the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Bible*, 175 Ariz. at 588 (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)).

**¶16** The trial court instructed the jury that a defendant is justified in using physical force in self-defense if: "A reasonable person in the situation would have believed that physical force was immediately necessary to protect against another's use . . . of unlawful physical force and the defendant used . . . no more physical force than what appeared necessary to a reasonable person in the situation." At the state's request and over Egan's objection, the court, relying on *State v. Bojorquez*, 138 Ariz. 495 (1984), gave instructions as to forceful resistance to law enforcement personnel:

> The threat or use of physical force is not justified . . . to resist arrest that the defendant knew or should have known was made by a peace officer . . . where the arrest was lawful or unlawful unless the physical force used by the peace officer exceeded that allowed by law.

. . . .

> [An] interested official of a jail, prison or correctional institution may use physical force for the preservation of peace, to maintain order or discipline[,] or to prevent . . . the commission of any felony or misdemeanor. If the amount of physical force used exceeds that allowed by law, the defendant [is justified in] using physical force to defend himself.

**¶17** Egan objected to the latter instructions on the grounds that the justification "instruction is for the defendant being justified," not the victim. Here, Egan expands on the same argument, contending first that the trial court improperly relied on "obiter dictum" in *Bojorquez*, and then claiming that to the extent *Bojorquez*'s language is not dictum, *State v. Ewer*, 254 Ariz. 326 (2023) overturned it.

**¶18** In *Bojorquez*, an inmate was denied a justification defense instruction and convicted of assaulting a prison guard. 138 Ariz. at 497. There, relying on A.R.S. § 13-403(2), our supreme court concluded "the jury was properly instructed that prison officials have the statutory right to use that amount of physical force necessary to maintain order within the prison." *Id.* at 498. That conclusion was not dictum. *See Canas v. Bay Ent., LLC*, 252 Ariz. 117, ¶ 15 (App. 2021) (Dictum is a "judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential." (quoting *Phelps Dodge Corp. v. Ariz. Dep't of Water Res.*, 211 Ariz. 146, n.9 (App. 2005))). Although *Bojorquez* was not addressing the same question Egan poses here, our supreme court's approval of the instruction was nonetheless necessary to its opinion.

**¶19** As to Egan's argument that *Ewer* abrogated *Bojorquez*, we disagree. In *Ewer*, the assault occurred during a confrontation between the defendant and victim in the aftermath of a failed drug transaction. *Id.* ¶¶ 2-4. The trial court granted the state's request to alter the language of the self-defense instruction, making it applicable not just to the "defendant," but to any "person." *Id.* ¶ 6. As a consequence, the instruction as phrased at trial became applicable to the victim's conduct. *Id.*

**¶20** Our supreme court held that, "[b]ecause the proper focus of a justification defense is on an objectively reasonable person in the defendant's position, the trial court erred in modifying the standard

[Arizona] self-defense justification instruction to incorporate the victim's use of force." *Id.* ¶ 19 (internal citations omitted). The court noted that, while a victim's actions are often relevant in a self-defense case, ultimately, "[i]t is of no import that a victim may have justifiably used or threatened force because the legality of the victim's conduct is immaterial to a justification analysis." *Id.*

**¶21** *Ewer* did not contemplate a justification instruction as it pertains to a self-defense claim against a victim with a statutory right to use force. *See generally Ewer*, 254 Ariz. 326; *see also Bojorquez*, 138 Ariz. at 498. *Ewer* does not bear at all on *Bojorquez*, much less overturn it. Even so, *Ewer* did not foreclose the use of other instructions when needed "to instruct the jury on applicable law based on the state's or defendant's positions at trial in order to assist the jury in analyzing a justification claim." 254 Ariz. 326, ¶ 22; *see also State v. Fish*, 222 Ariz. 109, ¶¶ 63-64 (App. 2009) (jury instructions on relevant law can be appropriate to assist jury in determining validity of self-defense claim). The trial court's instructions here offered relevant legal information to address each element of Egan's charged crime, based on the specific facts of Egan's case.

**¶22** Actions taken in self-defense "transform conduct that would otherwise be criminal into legally permissible conduct." *State v. Carson*, 243 Ariz. 463, ¶ 11 (2018); *see* A.R.S. § 13-205(A). The question for the jury was therefore twofold: (1) whether E.L.'s use of force was unlawful, and, if so, (2) whether a reasonable prisoner in Egan's position would have believed his use of force was necessary to protect himself from that unlawful force. *See* A.R.S. § 13-404(A), (B)(2). That is, in order to deem Egan's conduct justified, the jury was required to find that E.L. had first used excessive force, *see* § 13-404(B)(2) ("use of physical force against another is not justified . . . to resist arrest . . . unless the physical force used by the peace officer exceeds that allowed by law"), and that a reasonable person in Egan's circumstances would have believed physical force was necessary to protect himself, *see* § 13-404(A) ("person is justified in . . . using physical force against another when and to the extent a reasonable person would believe that physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful physical force"); *see also* § 13-403(2) (prison official allowed to use physical force under certain circumstances).

**¶23** The instructions given here, in describing E.L.'s statutory right to use reasonable force, did exactly what *Ewer* authorizes—provided necessary information about applicable law to assist the jury in analyzing

Egan's justification claim. *See* 254 Ariz. 326, ¶ 22. The trial court therefore did not abuse its discretion. *See Fish*, 222 Ariz. 109, ¶ 63. Because there was no error, we need not evaluate for harmlessness. *See id.* ¶¶ 66, 68 (first step in harmless error review is establishing that error occurred).

**¶24** Egan emphasized at oral argument that a better instruction would have been based on A.R.S. § 13-3881(B), which states that a person being arrested "shall not be subjected to any greater restraint than necessary for his detention." Section 13-3881 bears on the permissible use of force by an arresting law enforcement officer, versus the instruction given here, which was derived from § 13-404(A) and (B)(2), and which bears on the justification defense relative to the use of force by a law enforcement officer. This case falls into the latter category. Even so, we see no appreciable distinction between the two instructions. Moreover, Egan did not ask for an instruction based on § 13-3881 below. He therefore failed to preserve the issue, and has forfeited review for all but fundamental error. *See Escalante*, 245 Ariz. 135, ¶ 1. Given the similarity of the two instructions, we find no error, fundamental or otherwise. *See id.*

## III. Prosecutorial Error

**¶25** Finally, Egan argues both individual and cumulative prosecutorial error deprived him of a fair trial.[3] In considering claims of individual and cumulative prosecutorial error, we review "each alleged incident individually for error, after which we decide whether the cumulative effect of any errors we find 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Robinson*, 253 Ariz. 121, ¶ 64 (2022) (quoting *Payne*, 233 Ariz. 484, ¶ 106).

---

[3]Our supreme court has clarified the difference between prosecutorial "misconduct" and prosecutorial "error." *See In re Martinez*, 248 Ariz. 458, ¶ 47 (2020) ("When reviewing the conduct of prosecutors in the context of 'prosecutorial misconduct' claims, courts should differentiate between 'error,' which may not necessarily imply a concurrent ethical rules violation, and 'misconduct,' which may suggest an ethical violation."). Here, although Egan characterizes some of the alleged instances as "intentional," we find the prosecutor's actions are "better characterized as inadvertent error rather than intentional misconduct." *State v. Murray*, 250 Ariz. 543, ¶ 12 (2021). Therefore, we use the term "prosecutorial error" to address Egan's claims.

¶26          For a defendant to successfully establish prosecutorial error, he must first demonstrate that error exists, and then show that there is a reasonable likelihood the error could have affected the jury's verdict. *State v. Montoya*, 258 Ariz. 128, ¶ 10 (2024). A prosecutor's statement or conduct "must be viewed in context" to determine whether it affected the fairness of the trial. *State v. Hernandez*, 170 Ariz. 301, 308 (App. 1991) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). When a defendant challenges on appeal an instance of alleged prosecutorial error or cumulative prosecutorial error to which he failed to object at trial, we review for fundamental error. *State v. Vargas*, 249 Ariz. 186, ¶¶ 12-14, 17 (2020). If the alleged error was objected to below, we review for harmlessness. *Payne*, 233 Ariz. 484, ¶ 108. Egan asserts that two alleged errors were independently sufficient to warrant reversal, and others that, when evaluated cumulatively, deprived him of a fair trial.

## IV. "Individually Reversible" Prosecutorial Errors

¶27          Egan asserts that the prosecutor committed reversible error by soliciting improper credibility testimony from him on cross-examination. He also claims the prosecutor committed reversible error by improperly impugning defense counsel's integrity in her closing argument.

¶28          As to the solicitation of credibility testimony, Egan testified on cross examination that he had started to comply with E.L.'s commands before he was tased. The prosecutor then asked if Egan recalled being in the courtroom when the officers testified that he had only complied after being tased. Egan objected to the question as "argumentative." This objection was overruled, and Egan agreed that he remembered hearing that testimony. The prosecutor then asked, "And so you are saying that they're all wrong, and you're right?" Without further objection, Egan answered, "I am saying that happened how I say [it] happened, yes." Although Egan lodged his "argumentative" objection to the preceding question, he failed to object to the question he now takes issue with. And, even if the "argumentative" objection were deemed to relate to the question addressed here, his complaint on appeal is not that it was an impermissible argumentative question. An objection on one ground does not preserve the issue on another ground. *State v. Lopez*, 217 Ariz. 433, ¶ 4 (App. 2008). Because Egan failed to object, we review this claim solely for fundamental error. *See id.*; *Escalante*, 245 Ariz. 135, ¶ 35.

¶29          Our supreme court has held that one witness may not opine on the credibility of another witness. *State v. Doerr*, 193 Ariz. 56, ¶ 26 (1998). However, we have declined to adopt a bright-line rule prohibiting similarly

phrased "were they lying" questions. *State v. Morales*, 198 Ariz. 372, ¶¶ 10, 12 (App. 2000).[4]  We held in *Morales* that such questions "may be appropriate" if the defendant opens the door on direct or "when the only possible explanation for the inconsistent testimony is deceit or lying."  *Id.* ¶ 13.

**¶30**        At trial, three prison officers testified consistently about Egan's failure to comply with orders, his assaultive behavior toward E.L., and the fact that it took several prison officials and multiple taser deployments to get Egan to submit.  The jury viewed the video of the incident and photographs of E.L.'s injuries.  Viewed in its entirety, this evidence was sufficient for the jury to conclude beyond a reasonable doubt that Egan was guilty, unaffected by Egan's opinion on the officers' credibility—which was also unlikely to have surprised the jury. *See State v. Canion*, 199 Ariz. 227, ¶ 43 (App. 2000) ("The jury could not have been surprised to hear that [the defendant] believed the officer was mistaken in his recollection of the events, . . . nor do we think that [the defendant]'s acknowledgment of the discrepancies was likely to affect the jury's overall assessment of either witness's credibility.").

**¶31**        Ultimately, the jury was instructed that it alone determines the facts of the case and, in deciding those facts, it was to decide what testimony to accept and what evidence to reject.  The jury was also instructed that a police officer's testimony should not be given greater weight merely because he is an officer.  We presume the jury followed those instructions.  *See Martinez*, 230 Ariz. 208, ¶ 40.  And we view the prosecutor's question in context, *see Hernandez*, 170 Ariz. at 308, and in light of the other properly admitted evidence at trial, *see Fulminante*, 193 Ariz. 485, ¶ 50.[5]  Egan bears the "formidable burden of showing that the error was fundamental and warrants the 'rare case' remedy of reversal and a new trial."  *Escalante*, 245 Ariz. 135, ¶ 35.  Even assuming that error occurred, Egan has not shown that it went to the foundation of his case, took from

---

[4]*Morales* does not "contravene" *Doerr* as Egan contends.  *See Martinez*, 230 Ariz. 382, ¶ 13 (citing to both *Morales* and *Doerr* to support premise "that 'were they lying' questions and testimony are not always improper and, without more, will rarely amount to fundamental error").

[5]The objectionable question was singular and isolated.  When discussing the timing of Egan's compliance in closing argument, the prosecutor merely noted that there was conflicting testimony about the issue.  And, Egan made that same observation in his own closing.

him a right essential to his defense, or was "so egregious that he could not possibly have received a fair trial." *See id.* ¶ 21.

¶32 Egan next contends that the prosecutor committed reversible error by "impugn[ing] the integrity of defense counsel" during rebuttal closing argument. Specifically, Egan argues that the prosecutor "disparaged defense counsel by claiming that 'counsel [wa]s throwing everything at the wall,'" and that the prosecutor "suggest[ed] that defense counsel was disingenuous by imploring the jury not to let counsel 'lead [them] down that road.'" Egan raised this issue below when he asked the court to prevent the state from "personally attacking" defense counsel or describing defense counsel as "disingenuous" in front of the jury. After confirming with the prosecutor that she "didn't intend on doing that," the court nevertheless granted Egan's motion, prohibiting any remarks that referred to defense counsel as being "disingenuous in any way." The state concedes this claim was preserved, and we thus review for harmless error. *See State v. Anthony*, 218 Ariz. 439, ¶ 38 (2008).

¶33 Prosecutors are given "wide latitude in presenting their closing arguments to the jury." *State v. Jones*, 197 Ariz. 290, ¶ 37 (2000). While statements that unfairly slander opposing counsel's integrity are improper, *State v. Hughes*, 193 Ariz. 72, ¶ 59 (1998), critiques of defense theories and tactics are generally permissible, *see State v. Ramos*, 235 Ariz. 230, ¶ 25 (App. 2014) (no impropriety where prosecutor suggested in closing "that defense counsel was attempting to mislead the jury"). Here, neither of the prosecutor's cited remarks impugned defense counsel's ethics or integrity. They were made, instead, to criticize defense tactics and focus the jury's attention on the main issue of Egan's conduct, in direct response to the peripheral details Egan emphasized in his closing argument. We conclude no error occurred and need not address harmlessness. *See Escalante*, 245 Ariz. 135, ¶ 21.

## V. Other Prosecutorial Errors

¶34 Egan next asserts that several remarks made by the prosecutor, although not independently sufficient to warrant reversal, were prejudicial when considered cumulatively. He contends the comments constituted prosecutorial vouching, improper appeals to juror emotions, presentation of facts not in evidence, or some combination thereof.

### a. *E.L.'s family life*

¶35      First, Egan argues it was improper for the prosecutor to inform the jury that E.L. told his children he loved them every morning before leaving for work, just in case "something happen[ed] to him at that job." Egan contends this remark (1) amounted to presentation of "facts not in evidence," and (2) was an improper appeal to juror empathy.

¶36      In its briefing, the state counters that the remark about E.L.'s love for his children was a "reasonable inference" for jurors to draw. However, the state concedes it presented no other information about E.L.'s children or his relationship with them. While reasonable jurors might imagine a father saying such a thing to his children, the state, in its opening, is only "permitted to discuss evidence it anticipate[s] presenting at trial," and for which it has a good faith basis to believe will be admitted. *State v. Vargas*, 251 Ariz. 157, ¶ 16 (App. 2021). Because the state never attempted to admit evidence about this issue, there was no "good faith" basis for making the comment.

¶37      Indeed, as Egan contends, the only logical reason to mention E.L.'s children in connection with the dangerous nature of E.L.'s job was to appeal to the juror's "passions" and "empathy." This type of argument is prohibited. *State v. Allen*, 248 Ariz. 352, ¶ 49 (2020) (It is improper for a prosecutor to make remarks "to inflame the minds of jurors with passion or prejudice or influence the verdict in any degree." (quoting *State v. Herrera*, 174 Ariz. 387, 396 (1993))). At oral argument on this matter, the state conceded that the remark was improper. We accept the state's concession and conclude it was error.

### b. *"Snitches get stiches"*

¶38      The prosecutor explained in her closing that no inmates had come forward as witnesses because "snitches get stitches." Egan argues this statement was another improper reference to matters outside the record given that "no evidence [was] admitted to establish whether witnesses who cooperate with law enforcement face adverse consequences." He also argues the remark was improper vouching, "designed to undermine the *Willits* instruction" regarding the "state's failure to preserve a potential witness list of inmates" who may have observed the incident.

¶39      The state concedes, and we agree, that there was no specific evidence presented at trial regarding the potential adverse consequences a cooperating witness may face. In its briefing, the state nevertheless justifies

the remark by claiming "snitches get stitches" is a "commonly known concept," and "a reasonable inference" given "that the encounter occurred in front of everyone in that jail cell[,] and no one admitted [to having] seen anything." But at oral argument, the state conceded this was indeed prosecutorial error, and we agree.

¶40        Although in closing argument, counsel may argue the facts presented by the evidence and any reasonable inferences therefrom, *Bible*, 175 Ariz. at 602, we do not agree that "snitches get stitches" is a reasonable inference to be drawn merely from the dearth of inmate witnesses. But we also do not construe this particular remark as an improper reliance on "facts not in evidence." Rather, the statement is more suited to Egan's claim of prosecutorial vouching, which is where we focus our analysis. Vouching occurs when "the prosecutor places the prestige of the government behind its witness," or when "the prosecutor suggests that information not presented to the jury supports the witness's testimony." *Montoya*, 258 Ariz. 128, ¶ 43.

¶41        The detective assigned to investigate the jailhouse assault testified that none of the inmates had admitted to seeing anything, but he failed to record the names of inmates who were in the cell at the time, and the state failed to produce the list of inmate names and court times that E.L. had been announcing. As a result, Egan was unable to challenge the investigator's testimony. The trial court therefore granted Egan's request for a *Willits* jury instruction, permitting the jury to draw an unfavorable inference toward the state if it found that the state had "lost, destroyed or failed to preserve evidence whose content or quality are important to the issues in this case." *See State v. Willits*, 96 Ariz. 184 (1964).

¶42        In closing, Egan argued, based on the *Willits* instruction provided by the trial court, that the state's failure to preserve and produce the list of prisoners' names could serve as basis for reasonable doubt in the case. In its closing, as to this unpreserved evidence, the state argued:

> [L]et's talk about the inmates. [Egan] stated that somehow the state is trying to hide something from you without having the inmates [names,] but [the detective] got on the stand and he told you that when he went to jail cell 25, he opened the door and asked any of the inmates if they saw anything and he was met with silence. It is jail code. Snitches get stiches. Nobody was say[ing] anything to him.

¶43        The implication of this argument was that any evidence derived from the list would have been beneficial to the state's case—in effect, by "snitching" on Egan, the other inmates would have had to corroborate E.L.'s testimony and version of the events.  Thus, the comment was improper prosecutorial vouching.  *See State v. Salcido*, 140 Ariz. 342, 344 (App. 1984).

### c.  *E.L.'s employment tenure & "motive"*

¶44        Egan next argues the prosecutor "put the prestige of the government behind [E.L.]'s testimony" when she told the jury in closing that E.L. had "worked [at the detention center] for 17 years.  He d[id]n't have a motive to go and beat up the defendant."  He reasons that, due to the trial court's "erroneously given [justification] jury instructions," his "self-defense theory" was "predicated upon a jury believing that [E.L. had] used excessive force," and thus the instructions "provide[d] a motive for [E.L.] to exaggerate [Egan]'s infractions on the day of the incident."  He then claims that, because "this motive was never argued by the defense," the prosecutor's comment constituted "bare vouching designed to put government credibility behind the State's case."

¶45        But the prosecutor's remark did not concern an alleged "motive" for E.L. to "exaggerate" or "lie" about the incident.  Rather, the prosecutor's remark illustrated the lack of evidence that E.L. had any "motive"—in other words, any credible reason—to have used excessive, and thus illegal, physical force against Egan, absent some physically assaultive behavior on Egan's part.  While neither party is required to prove motive in the first instance, whether motive exists "is a circumstance that may be considered" by the jury, *State v. Hunter*, 136 Ariz. 45, 50 (1983), and here, the jury was so instructed.  We see no prosecutorial error here.

### d.  *"We know" statements*

¶46        Egan next claims the prosecutor improperly placed the prestige of the government behind the state's case by using the phrase "we know" several times during closing argument.  Although the objectionable statements are not explicitly identified in Egan's briefing, we assume for this decision that he is referring to statements like the following:  "[H]ow do we know [Egan] assaulted officer [E.L.]?"; "Now how do we know that [Egan] intentionally, knowingly or recklessly caused physical injury to [E.L.]?"; and "Now, how do we know that [Egan] was in the custody of the Pinal County jail?"

¶47      In *State v. Acuna Valenzuela*, our supreme court acknowledged that "[T]here is a fine contextual line between the use of 'we know' inclusively, *i.e.*, to describe evidence and outline inferences from that evidence with the jury, and the use of 'we know' in an exclusive manner, *i.e.*, to refer to the State collectively." 245 Ariz. 197, ¶ 85 (2018). The court also noted that the government's use of "we know" statements can be "concerning," and "caution[ed] prosecutors to refrain from using [these types of] phrases to suggest that their argument bears the imprimatur of the state." *Id.* However, in *Acuna Valenzuela*, our supreme court ultimately determined that the prosecutor's use of "we know" statements, such as "we know the defendant attempted to shoot and kill [the victim]," did not rise to the level of prejudicial error because they did not "impermissibly express [the prosecutor's] personal opinion to the jury." *Id.* ¶¶ 83-85.

¶48      Here, one of the prosecutor's "we know" statements was made while repeating the trial court's burden-of-proof jury instruction. The other six occurred while the prosecutor was marshaling and summarizing the evidence. *See id.* ¶ 84 (noting "it is permissible to use the words 'we know' to describe the evidence where prosecutor 'did so only to marshal evidence'" (quoting *United States v. Ruiz*, 710 F.3d 1077, 1086 (9th Cir. 2013))). Like in *Acuna Valenzuela*, none of the statements made here expressed the prosecutor's "personal opinion" on the evidence, and thus none rose to the level of prejudicial error. *See id.* ¶ 85.

      **e.**  *Job description*

¶49      Egan next contends that in both opening and closing, the prosecutor improperly appealed to juror "passions" and "empathy," by saying E.L.'s job "d[id] not entail being assaulted by inmates." But E.L. testified about his job description and daily duties at trial, which did not, unsurprisingly, involve being assaulted by inmates. In addition to being largely intuitive, this was a permissible comment on the evidence, not an appeal to juror passions. *See State v. Johnson*, 247 Ariz. 166, ¶ 166 (2019). We find no error.

      **f.**  *"We" are here to "hold him accountable"*

¶50      Lastly, Egan argues the prosecutor improperly appealed to the jurors' sense of duty to "protect community values," and "preserve civil order" by telling them "we" are here to "hold [Egan] accountable." The state may not appeal to the "emotions, prejudices, or passions" of the jury to obtain a guilty verdict. *Acuna Valenzuela*, 245 Ariz. 197, ¶ 109. But again, counsel is given "wide latitude" in argument, and the use of "excessive and

emotional language is the bread and butter weapon of counsel's forensic arsenal" in arguing their case to the jury. *State v. Gonzales*, 105 Ariz. 434, 437 (1970). Given that the purpose of the prosecution was to hold Egan accountable—if the jury agreed with the state's case—we see no prosecutorial error here. As in *Acuna Valenzuela*, "the prosecutor's statement referred to the jury's role in the justice system and was not error." 245 Ariz. 197, ¶ 111.

## VI. Cumulative Effect

**¶51**        Egan contends "the cumulative impact" of the prosecutor's errors infected the proceeding with unfairness "from the start," denying him a fair trial and meriting reversal. While we do not condone improper remarks, we will not reverse a conviction merely to punish a prosecutor's misdeeds or to deter future misconduct. *State v. Moody*, 208 Ariz. 424, ¶ 152 (2004). Instead, when assessing claims of prosecutorial error, we examine "whether the cumulative effect of individual allegations 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Acuna Valenzuela*, 245 Ariz. 197, ¶ 119 (quoting *Payne*, 233 Ariz. 484, ¶ 134). "Cumulative error requires reversal only when misconduct is 'so pronounced and persistent that it permeate[d] the entire atmosphere of the trial.'" *Id.* (quoting *Payne*, 233 Ariz. 484, ¶ 134). And as we explained in *State v. Romero*, the standard for showing reversible cumulative error is "very demanding" because it requires the defendant to show error so egregious that "injustice is obvious." 258 Ariz. 237, ¶¶ 64-65, 68 (App. 2024).

**¶52**        Here, we only evaluate the two errors expressly found and the conflicting-testimony question directed at Egan, assuming without concluding that it was improper. *See id.* ¶ 64. We then "consider the cumulative effect on the fairness of [Egan]'s trial." *Vargas*, 251 Ariz. 157, ¶ 9. As to Egan's claim of improper solicitation of credibility evidence, the jurors were instructed that they alone evaluate each witness' testimony and "may accept everything a witness says or part of it or none of it." And as to Egan's claims of vouching and improper appeal to emotion, the jurors were instructed that they were to determine facts only from the evidence produced in court, that what the lawyers say is not evidence, and that they were not to be influenced by sympathy. Again, we presume jurors follow their instructions. *Id.*; *State v. Haverstick*, 234 Ariz. 161, ¶ 8 (App. 2014) (instruction that attorney arguments are not evidence "can be sufficient to 'cure' improper vouching" (quoting *Payne*, 233 Ariz. 484, ¶ 109)).

¶**53**      Although we find the prosecutor's improper argument that "snitches get stitches" especially troubling to the extent it undermined the court's *Willits* instruction, we cannot conclude that this error, even when considered cumulatively with the improper appeal to juror emotion and the question addressing conflicting testimony, "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Payne*, 233 Ariz. 484, ¶ 134 (quoting *Hughes*, 193 Ariz. 72, ¶ 26).  In light of the weight of properly admitted evidence of Egan's guilt and the proper jury instructions provided, the errors, taken together, did not have the required distorting effect on the trial as a whole; therefore, "the guilty verdict actually rendered in *this* trial was surely unattributable" to any purported errors.  *Bible*, 175 Ariz. at 588 (quoting *Sullivan*, 508 U.S. at 279). Egan has failed to meet his "very demanding" burden of showing the "obvious" injustice required for reversal.  *Romero*, 258 Ariz. 237, ¶ 65 (quoting *Escalante*, 245 Ariz. 135, ¶ 20).

## Disposition

¶**54**      For the foregoing reasons, we affirm.